UNITED STATES of America,
Plaintiff-Appellant,

v.

Gilliam KERLEY, a/k/a David Gilliam
Kerley, Defendant-Appellee.

No. 84–2753.

United States Court of Appeals,
Seventh Circuit.

Argued March 4, 1986.

Decided April 3, 1986.

See also, 7th Cir., 753 F.2d 617.

John T. Bannon, Jr., Asst. Atty. Gen.,
Washington, D.C., for plaintiff-appellant.

Gilliam Kerley, pro se.

Before BAUER, POSNER and EASTER-
BROOK, Circuit Judges.

PER CURIAM.

The United States appeals the dismissal
of an indictment which resulted from its
refusal to comply with certain provisions of
a district court's discovery order. We re-
verse and remand for trial.

■ Following his indictment for failing to register with the Selective Service System in violation of 50 U.S.C. Appx. §§ 453 and 462(a),[1] Gilliam Kerley sought discovery of numerous government documents relating to "the detection, identification, and prosecution of suspected nonregistrants." Kerley charged, among other things, that he and others had been selectively prosecuted based on the exercise of their First Amendment right to speak out in protest of the existence and implementation of the Military Selective Service Act and sought the dismissal of his indictment. The district court concluded that Kerley had raised "a reasonable doubt about the prosecutor's purpose" and ruled that Kerley therefore was entitled to an evidentiary hearing to determine whether his prosecution is the result of invidious discrimination in the enforcement of the selective service registration law. The court further ordered the government to disclose certain documents that the court determined relevant to the selective prosecution issue. But the government did not produce all the documents, and Kerley moved for dismissal. The court granted Kerley's request and dismissed the indictment as a sanction for the government's refusal to obey the discovery order. *See* Fed.R.Crim.P. 16(d)(2). The government appeals and argues that the district court erred in granting Kerley an evidentiary hearing and discovery on his selective prosecution claim. It asserts that *Wayte v. United States,* —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), is dispositive of Kerley's claim. We note jurisdiction under 18 U.S.C. § 3731.

■ In order to obtain an evidentiary hearing on the issue of selective prosecution, a defendant initially must make "a *prima facie* case based on facts 'sufficient to raise a reasonable doubt about the pros-

ecutor's purpose.'" *United States v. Jarrett,* 705 F.2d 198, 204 (7th Cir.1983), *cert. denied,* 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984), *quoting United States v. Falk,* 479 F.2d 616, 620–21 (7th Cir.1973) (en banc). This threshold showing requires that the defendant, at a minimum, prove that he had been singled out for prosecution while others have not though they similarly are in violation of the law and that the prosecutor's discriminatory selection was based on an impermissible consideration, such as race, religion, or exercise of constitutional rights. *United States v. Mitchell,* 778 F.2d 1271, 1277 (7th Cir.1985); *United States v. Jarrett,* 705 F.2d at 204–05. We conclude that Kerley fails to meet this initial burden.

Kerley's attack on the government's prosecution of him relies on virtually the same facts as before the Supreme Court in *Wayte v. United States, supra.* In support of his claim, Kerley submitted an affidavit in which he, as the defendant in *Wayte,* posited facts to show that the government had chosen to prosecute him and others through a selection scheme which the government knew would result in the prosecution of vocal non-registrants only. In his affidavit, Kerley asserts that, according to government figures, more than 500,000 persons have violated the Military Selective Service Act by their failure to register and more than 1,000,000 persons failed to register on time but that only thirteen individuals, including himself, have been indicted. He further states that while the majority of non-registrants have not held press conferences, given speeches, written letters to the government, or otherwise engaged in the active exercise of their First Amendment right to oppose the existence and implementation of the Military

---

1. Under the current selective service registration law, all men of a certain age must register. 50 U.S.C. Appx. § 453. Even ordained ministers and theological students are not exempt from the registration requirement though the Act does exempt members of the clergy from training and service and defers liability to qualified ministry students. *See* 50 U.S.C. Appx. § 456(g). All other individuals conscientiously opposed to training and service must apply for such status through their local boards. 50 U.S.C. Appx. § 456(j). But if an individual's "religious training and belief" (the Act excludes "essentially political, sociological, or philosophical views, or a merely personal moral code," *id.*) are so strong as to preclude even registration, his only alternative is to violate the law and accept the consequences come what may.

Selective Service Act, he and each of the other twelve individuals indicted have. Kerley then went on to describe the government's passive enforcement policy and its further efforts to persuade non-registrants to change their minds (known as the "beg" policy); he claims that the net effect of these policies "is to remove non-vocal non-registrants and non-registrants whose opposition to the Military Selective Service Act is weakest ... leaving only the most vocal, the most adamant opponents of the draft registration program to face prosecution." The government, he asserts, "has long been aware" that this policy would function to "single out [for prosecution] persons who have actively exercised their First Amendment rights" while an alternative "active enforcement system," only recently initiated but identified "for at least two years" as a method to locate suspected non-registrants, to date has generated no prosecutions and ultimately would result in the prosecution of "only a small percentage of the persons identified and who remain unregistered." The district court concluded that "the clear effect of the government's passive enforcement system raises a serious question as to the government's motive for selecting non-registrants for prosecution," and entitled Kerley to discovery and an evidentiary hearing.

■ After the district court decision, the Supreme Court issued its decision in *Wayte v. United States*. The Court determined that the government's passive enforcement policy was constitutionally permissible under the standards enunciated in *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), and therefore the First Amendment afforded defendants, such as Kerley, who protested the law but also openly confessed their guilt no immunity from prosecution. *Wayte v. United States*, 105 S.Ct. at 1533–34. To raise a question as to the propriety of a prosecutor's purpose in initiating criminal charges, a defendant must do more than present facts which tend to show that

the government was aware of discriminatory consequences of its policy but went ahead and implemented the policy *in spite of* its adverse effects upon an identifiable group; the defendant must also establish that the government *intended* such a result. *Id.* at 1531–32.

We reject Kerley's contention that *Wayte* is distinguishable from his case because the Supreme Court in *Wayte* explicitly refused to address the issue whether Wayte had earned the right to discover government documents relevant to his claim of selective prosecution. *See* 105 S.Ct. at 1529–30 n. 5. Contrary to Kerley's reading, *Wayte* is conclusive on the constitutionality of the passive enforcement system; the Supreme Court thoroughly analyzed its development and implementation and concluded that "the Government's passive enforcement system together with its 'beg' policy violated neither the First nor Fifth Amendment." *Wayte v. United States*, 105 S.Ct. at 1534–35. Thus, Kerley's argument that *Wayte* cannot be read as a blanket endorsement of the passive enforcement system fails. Similarly, Kerley's further claim that the government "deliberately delayed" the creation of a constitutionally-sound "active enforcement system" is not viable. *Id.* at 1534 ("Passive enforcement was the only effective interim solution available to carry out the Government's compelling interest [to ensure registration for the national defense].").

■ Kerley presents no facts tending to establish that the government prosecuted him "because of" his protest activities. *See Wayte v. United States*, 105 S.Ct. at 1532. Kerley's evidence, primarily a statistical analysis of the effects of the passive enforcement system, fails to establish intentional discrimination against him as an individual or a member of a constitutionally protected class against which the law is being selectively enforced. *Cf. United States v. Falk*, 479 F.2d at 619–22.[2] The

2. In a motion to dismiss for selective prosecution those counts of his indictment charging

him with failure to have a draft card, Falk had offered to prove that over 25,000 persons had

most that Kerley's allegations establish is that he was treated fully in accord with a constitutionally valid enforcement policy, and the First Amendment implications that he (just as Wayte) identifies apply to all non-registrants who report themselves even if the government engaged only in active enforcement of the law.

> For example, a nonregistrant who wrote a letter informing Selective Service of his failure to register could, when prosecuted under an active system, claim that the Selective Service was prosecuting him only because of his "protest." Just as in this case, he could have some justification for believing that his letter had focused inquiry upon him. Prosecution in either context would equally "burden" his exercise of First Amendment rights. Under the petitioner's view, then, the Government could not constitutionally prosecute a self-reporter—even in an active enforcement system—unless perhaps it could prove that it would have prosecuted him without his letter. On principle, such a view would allow any criminal to obtain immunity from prosecution simply by reporting himself and claiming that he did so in order to "protest" the law. The First Amendment confers no such immunity from prosecution.

*Wayte v. United States*, 105 S.Ct. at 1534. *Cf. United States v. Heilman*, 614 F.2d 1133, 1139 (7th Cir.) ("not improper for the Government to concentrate on those violations which appear most flagrant"), *cert. denied*, 447 U.S. 922, 100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980); *United States v. Stout*, 601 F.2d 325, 328 (7th Cir.1979) ("Aggressively displaying one's antipathy to the ... system or daring the government to enforce it [the law] does not create immunity from, or a defense to, prosecution."). The "presumption" thus remains that Kerley's "prosecution for violation of

a criminal law [was] undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Falk*, 479 F.2d at 620.

Even so, Kerley disputes the necessity to establish a *prima facie* case at the discovery stage and asks this court to limit *Wayte*'s impact. Kerley argues that "[a]lthough government officials' awareness of the disproportionate impact of the 'passive' system on vocal nonregistrants and the availability of alternative systems is not enough to prove an equal protection violation, ... it is enough to raise a 'reasonable doubt' about the purposes served by the enforcement system." Appellee's Brief at 41. He claims that further discovery will produce the facts necessary to demonstrate the requisite discriminatory intent of the government's passive enforcement policy and "will not 'merely re-establish the particular facts of the "passive" system.'" *Id.* at 39. We disagree.

■ It is true that a motion to compel discovery in a selective prosecution case does not stand on quite the same footing as a motion to dismiss the indictment. The defendant need not make a "complete *prima facie* case" as he must when the motion is aimed at securing an evidentiary hearing on the merits of his claim for selective prosecution; rather, he need only show a "colorable basis" for the claim. *United States v. Mitchell*, 778 F.2d at 1277, *citing Wayte v. United States*, 105 S.Ct. at 1539 (Marshall, J., dissenting). Still, "to discover the requested government documents, [the defendant] must introduce 'some evidence tending to show the existence of the essential elements of the defense.'" *Id.* But as noted earlier, Kerley presents no evidence that he was singled out for prosecution "because" he spoke out in protest.

---

dispossessed themselves of their draft cards, that the government had published a policy not to prosecute violators, that Falk was a vocal anti-draft activist who participated in draft-resister organizations and protested American action in Vietnam, that a government prosecutor

told Falk's attorney that Falk had been singled out for prosecution because of his anti-draft activities, and that a chain of high-level officials of the Justice Department personally approved Falk's prosecution. *United States v. Falk*, 479 F.2d at 621–22.

Even with additional discovery, Kerley could not establish that the government's passive enforcement policy selected non-registrants for prosecution on the basis of their speech given the way the "beg" policy was carried out.

The Government did not prosecute those who reported themselves but later registered. Nor did it prosecute those who protested registration but did not report themselves or were not reported by others. In fact, the Government did not even investigate those who wrote letters to Selective Service criticizing registration unless their letters stated affirmatively that they had refused to comply with the law.... The Government, on the other hand, did prosecute people who reported themselves or were reported by others but who did not publicly protest. These facts demonstrate that the Government treated all reported nonregistrants similarly. It did not subject vocal nonregistrants to any special burden. Indeed, those prosecuted in effect selected themselves for prosecution by refusing to register after being reported and warned by the Government.

*Wayte v. United States*, 105 S.Ct. at 1532. *But see United States v. Schmucker*, 766 F.2d 1582, 1583 (6th Cir.1985) (order entitling defendant to evidentiary hearing to determine whether he was indicted for failure to register because of his exercise of First Amendment rights vacated and case remanded to trial court "because there is a possibility that the parties will seek to introduce additional evidence in this case"). Despite his vocal opposition to registration, the government gave Kerley (as all other non-registrants) a chance to avoid prosecution under its "beg" policy, but Kerley declined to escape prosecution by registering. Kerley has not shown (nor could he show) that his prosecution resulted from a motive on the part of the government to prosecute him on the basis of the exercise of First Amendment rights. As such, Kerley is not entitled to an evidentiary hearing or discovery on his claim of selective prosecution. *See United States v. Eklund*, 733 F.2d 1287, 1295 (8th Cir.1984) (en banc),

*cert. denied*, —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985).

REVERSED AND REMANDED.