**UNITED STATES of America, Plaintiff,**

**v.**

**David Duane DRAKE and Jeffrey Lynn Drake, Defendants.**

**No. 95 CR 50054.**

United States District Court,
N.D. Illinois,
Western Division.

June 6, 1996.

Michele S. Schroeder, U.S. Attorney's Office, Rockford, IL, for Plaintiff.

Daniel J. Cain, Deron R. Benson, Sreenan & Cain, P.C., Rockford, IL, Paul E. Gaziano, Nancy L. Doepke, Paul E. Gaziano Law Officers, Rockford, IL, for Defendants.

## MEMORANDUM OPINION
## AND ORDER

REINHARD, District Judge.

Defendants, David Duane Drake ("David Drake") and Jeffrey Lynn Drake ("Jeffrey Drake"), are both charged with two counts of violating 15 U.S.C. § 714m(c) for the unlawful disposition of collateral mortgaged to the Commodity Credit Corporation. Pending before the court are various pretrial motions filed separately by both defendants. All pending motions have been consolidated for purposes of this opinion and will be addressed herein.

## I. MOTIONS TO DISMISS
## THE INDICTMENT

Both defendants move to dismiss the indictment on the grounds that it is barred by the Fifth Amendment's prohibition against multiple punishments for the same offense. The facts relevant to their respective motions are not in dispute and are as follows. Defendants operated a family farm business and, in the course of that business, participated in an Agricultural Stabilization and Conservation Service ("ASCS") program. The ASCS operates under the United States Department of Agriculture ("USDA") and administers price support loan programs for grains and similarly handled commodities. Participating farmers can obtain loans from the Commodity Credit Corporation ("CCC"), an agency of the USDA, and as security for these loans, pledge harvested crops as collateral. The relevant years of defendants' participation are 1993 and 1994.

To participate in the program, defendants entered into contractual agreements with the CCC. The terms and conditions of these contractual agreements are contained in Form CCC–601, CCC's standard contract for these loans. Two different versions of Form CCC–601 are involved in this case as defendants' loans were obtained at different times. One form is dated 4/26/93 and the other form is dated 2/28/91. The rules and regulations governing the CCC and the ASCS's administration of its program are found in Title 7 of the Code of Federal Regulations, part 1402 *et seq.* Some of the key terms and conditions

contained in Form CCC–601 are also enumerated in the federal regulations.

In February 1994, the Stephenson County ASCS Committee ("Committee") conducted a hearing regarding the alleged disposition, removal and conversion of secured crops in 1993 and 1994 by defendants. Both defendants were present and participated at this meeting, during which the committee determined that defendants did not employ good faith in their disposition of the secured crops. Upon making this determination, the Committee called defendants' loans, imposed liquidated damages to the loan balances in accordance with the terms and conditions of the relevant CCC–601 contracts and suspended both defendants from obtaining any of the same type of loans for a two-year period.

Defendants claim that the penalties imposed do not bear a reasonable relationship to the government's loss, were punitive in nature and therefore constitute "punishment" for purposes of double jeopardy. Defendants further claim that these penalties were imposed upon them for the same conduct upon which the indictment is based and that the indictment, therefore, must be dismissed. In support of these claims, defendants contend that the imposition of the liquidated damages did not solely serve remedial goals, but also served punitive goals. Jeffrey Drake additionally contends that the imposition of the two-year suspension also served punitive, and not just remedial goals. Defendants contend that the Committee's sanctions were meant to punish defendants for their lack of good faith in the disposition of the secured crops. In support of these contentions, defendants principally rely upon *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In response, the government contends that the sanctions imposed were solely remedial and did not constitute "punishment" for purposes of double jeopardy. In addition, the government contends that any claim by defendants that the imposition of liquidated damages constituted punishment is foreclosed by the fact that the damages were contractually agreed to by defendants.

■ The Double Jeopardy Clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Halper*, 490 U.S. at 440, 109 S.Ct. at 1897. In *Halper*, the Court addressed the issue of whether and under what circumstances a civil penalty may constitute punishment for purposes of the Double Jeopardy Clause. The Court held that a "civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." *Id.* at 448, 109 S.Ct. at 1901. In more specific terms, a sanction is punishment if it "cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes." *Id.* In *Austin v. United States*, 509 U.S. 602, 610, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993), the Court reiterated this latter proposition, stating that the sanction will constitute punishment if it serves to deter or punish, notwithstanding the fact that it might also serve some remedial purpose. *But see Bae v. Shalala*, 44 F.3d 489, 493 (7th Cir.1995) (construing statutory sanctions to be remedial despite incidental punitive effects).

■ While it is the imposition of liquidated damages which forms the primary basis for defendants' claims, the court will first address Jeffrey Drake's contention that the imposition of the two-year suspension was punitive and not solely remedial in nature. At the outset, the court notes that neither Jeffrey Drake nor the government directs the court to the source of the Committee's authority for imposing the two-year suspension. The court presumes, therefore, that the committee acted pursuant to 7 C.F.R. § 1421.16(g), which permits the denial of future loans for a period of two years after the date the unauthorized removal of secured crops is discovered.

A cursory examination of part 1421.16(g) reveals that the two-year suspension is not punitive in nature, rather, the regulation exists to protect the integrity of the CCC and the price support loan program. Part 1421.16(g) authorizes the imposition of various sanctions, including a two-year suspension from obtaining future loans, "[i]f, for any violation in accordance with paragraph (b) of this section, the County Committee determines that CCC's interest is not or will not be protected." The fact that the particular sanction imposed here was both limited in duration and designed to protect the financial integrity of the CCC leads the court to conclude that the sanction serves solely a remedial purpose. In reaching this conclusion, the court finds both *Bae v. Shalala*, 44 F.3d 489 (7th Cir.1995) and *United States v. Furlett*, 974 F.2d 839 (7th Cir.1992) analogous. Although the sanctions at issue in those cases were of slightly different natures than here— *Bae* involving the debarment from providing services to individuals with approved or pending drug product applications and *Furlett* involving the debarment from trading on any contract market—the Seventh Circuit found them to serve remedial goals because the debarments protected the integrity of those markets despite the fact that the debarments were permanent in duration. *See Bae*, 44 F.3d at 495; *Furlett*, 974 F.2d at 844–45. Accordingly, the court finds that the two-year suspension was solely remedial and served no punitive or retributive purpose.

■ Turning, therefore, to defendants' primary contention, the court must determine whether the liquidated damages imposed by the Committee constituted punishment for purposes of the Double Jeopardy Clause. Both defendants heavily rely on *Halper*. At issue in *Halper* was whether civil penalties imposed pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3731, constituted punishment. In reaching its decision, the Court was careful to limit the scope of its decision, stating "[w]hat we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902.

The facts of this case are dramatically different, and in the court's opinion, legally distinguishable from *Halper*. Here, the liquidated damages (or what defendants term penalties) were imposed pursuant to the con-

tractual agreements between defendants and the CCC, not pursuant to a civil statute as in *Halper*. The liquidated damages provisions are contained in sections 7 and 8 of the CCC–601 contract forms and clearly set forth the method of calculation for such damages. Thus, the source of the imposition of the liquidated damages is derived solely from the agreed terms of a contract, not a civil statute applicable to the public at large as in *Halper*. On this basis alone, the court finds *Halper* not only distinguishable, but inapplicable. *Cf. United States v. Payne*, 2 F.3d 706, 711 (6th Cir.1993) (holding that government's enforcement of its employment contract against postal employee did not constitute punishment); *United States v. Reed*, 937 F.2d 575, 577 (11th Cir.1991) (finding *Halper* inapplicable to a penalty imposed upon a federal employee pursuant to a collective bargaining agreement).

■ Even if this court were to find *Halper* applicable to this case, it would nonetheless conclude that the liquidated damages or penalties imposed were not punishment for purposes of double jeopardy. The heart of *Halper*'s analysis is that a penalty is not remedial if it does something other than make the government whole. *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. Assessing what amount goes beyond what is necessary to make the government whole is not an exact pursuit. To this end, the Court stated that "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice. Our upholding reasonable liquidated damages clauses reflects this unavoidable imprecision." *Id.* The Court's past approval of reasonable liquidated damages clauses, *see Rex Trailer Co. v. United States*, 350 U.S. 148, 151, 76 S.Ct. 219, 221, 100 L.Ed. 149 (1956), and fixed-penalty-plus-double-damages provisions, *see United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S.Ct.

379, 386–87, 87 L.Ed. 443 (1943), leads this court to conclude that the liquidated damages clauses at issue here are reasonably designed to make the government whole. Liquidated damages clauses, when reasonable, are not to be regarded as penalties. *Rex Trailer Co.*, 350 U.S. at 151, 76 S.Ct. at 221. The reason for this is that, when valid, liquidated damages are compensatory in nature. *See* Restatement (Second) of Contracts § 356 cmt. a. The applicable federal regulations governing the CCC reflect that the reason liquidated damages clauses are included in the contracts is because it is difficult, if not impossible, to prove the amount of damages to the CCC in the event secured crops are improperly removed. *See* 7 C.F.R. § 1421.16(c). In addition, the liquidated damages are assessed, in part, on the quantity of the commodity involved in the violation. Thus, the provisions at issue here are reasonable.

■ Even if this court were to agree with defendants' characterization of the provisions at issue and conclude they are punitive, defendants would not prevail on their double jeopardy claims. If a liquidated damages clause is found to be punitive, it ceases to be a valid contractual term and is unenforceable on the grounds of public policy. *See* Restatement (Second) of Contracts § 356. Unlike a liquidated damages clause contained in a statute, which if found to be punitive, would merely transform the statutory remedy into a criminal penalty, *see Rex Trailer Co.*, 350 U.S. at 154, 76 S.Ct. at 222, the provisions at issue here arise out of a contract, which if found to be punitive, would cease to be enforceable. Thus, if the provisions at issue here are punitive, all defendants would have is a basis upon which to avoid paying the liquidated damages, not a basis to dismiss the indictment. Accordingly, defendants' separate motions to dismiss the indictment are denied.[1]

---

1. Both defendants have orally requested an evidentiary hearing in connection with their motions to dismiss for the purpose of offering evidence with respect to the difference in the calculation of liquidated damages when good faith is and is not exercised in the unauthorized removal of collateral. The court does not find an evidentiary hearing necessary for this purpose as the contractual provisions in sections 7 and 8 contain the method of calculation and the differences when collateral is removed with and without good faith. Moreover, there are no disputed facts with respect to their motions to dismiss which would warrant a hearing, *cf. United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir.1992) (holding, in

## II. MOTION TO SUPPRESS STATEMENTS

David Drake moves to suppress statements he made to government agents on the grounds that the government obtained the statements in violation of his Fifth and Sixth Amendment rights. In support thereof, he alleges that a federal agent contacted him by telephone on August 18, 1994 for the purpose of arranging an interview and that he advised the agent that he did not wish to waive his right to an attorney and did not want to participate in an interview. On or about December 1, 1994, the same federal agent contacted him again for the purpose of conducting an interview, at which time he again advised the agent that he did not wish to waive his right to an attorney. On or about December 5, 1994, the same federal agent visited him at his brother's residence for purposes of interviewing him. David Drake advised the agent that he had not had the opportunity to consult with an attorney and that he would not sign any document without first being able to speak with an attorney. The agent assured him that she would provide him with a copy of his statement and that he need not sign anything until after he had an opportunity to consult with his lawyer. At that time, David Drake was questioned by the agent and a statement was prepared by the agent, a statement which he refused to sign at that time. David Drake claims that he was unaware at this time that an unsigned statement might still be admissible as evidence against him at a subsequent trial. At some later date, the agent returned and asked him again to sign the statement, during which the agent indicated that his signature was necessary for her to wrap up the investigation and that it was the best thing to do. David Drake signed the statement at that time.

David Drake claims that during these various encounters, the federal agent made comments to the following effect: (1) that she [the agent] "needed to take a statement from him;" (2) that she "had to obtain a statement from him prior to completing her investigation;" (3) that "it would be the best thing for us to just get this [the interview process] out of the way;" and (4) that "she had to get this done and that it was the best thing for him to do." David Drake contends that these comments constitute improper promises and inducements, making the statements involuntary and obtained in violation of his Fifth Amendment rights. He further contends that the federal agent's contacts subsequent to the August 18, 1994 conversation violated his Fifth and Sixth Amendment rights because he did not initiate any further contact after invoking his right to counsel.

In response, the government contends that none of the agent's contacts violated David Drake's Fifth or Sixth Amendment rights because he was never in custody during any of the conversations or visits. All visits occurred on his farm, and he signed a written waiver of his rights during the December 5, 1994 visit prior to giving his statement to the agent. The waiver form, signed and initialled by David Drake, indicates among other things that he had talked with a lawyer but did not wish to have him or her present, that no promises or threats had been made and that anything he says can be used against him in court. The government further contends that the circumstances under which David Drake was interviewed and the agent's alleged comments are insufficient to render his statement involuntary.

In his reply brief, David Drake alleges that the agent "misled [him] by stating that an unsigned statement would not be used against [him], while knowing full well that such a statement could, in fact, be admitted into evidence against him at trial." He does not, however, contest the government's factual representations or address the fact that he signed a written waiver form that indicates

context of motion to suppress, that there must be disputed material facts before a hearing is necessary), nor is the hearing requested for the purpose of discovery, *see United States v. Heidecke*, 900 F.2d 1155, 1160 (7th Cir.1990) (holding that a defendant is not entitled to an evidentiary hearing on issue of double jeopar-

dy (for purpose of discovery related to such claim) unless he offers sufficient evidence to raise a reasonable doubt that the indictment was proper and not a mere sham). Accordingly, the court denies defendants' oral requests for an evidentiary hearing.

he was warned contrary to the agent's alleged comment.

 Under *Miranda v. Arizona*, 384 U.S. 436, 469–73, 86 S.Ct. 1602, 1625–27, 16 L.Ed.2d 694 (1966), law enforcement officers must advise a suspect of his right to consult with an attorney and to have counsel present during the interrogation prior to initiating a custodial interrogation. If a suspect invokes his right to counsel under *Miranda*, he is not subject to further interrogation until counsel is present or until the suspect himself initiates further discussion. *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1980). *Miranda* does not apply to every interrogation, however, only to *custodial* interrogation. *United States v. Vega*, 72 F.3d 507, 516 (7th Cir. 1995). Similarly, a suspect's right to be free from further interrogation under *Edwards* exists only if there has been no break in custody. *McNeil v. Wisconsin*, 501 U.S. 171, 177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991); *United States v. McKinley*, 84 F.3d 904, 907–08 (7th Cir.1996). Moreover, even when a suspect is in custody, it is not a violation of *Miranda* to obtain an oral statement if the suspect merely states a desire to consult an attorney before signing a written statement. *Connecticut v. Barrett*, 479 U.S. 523, 529–30, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920 (1987).

 An interrogation is custodial if it occurs while the person "has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Sprosty v. Buchler*, 79 F.3d 635, 640 (7th Cir.1996). David Drake does not contend he was in custody during any of his encounters with the federal agent, nor are there any facts from which the court could reach such conclusion. In addition, the mere fact that the agent gave him *Miranda* warnings during the December 5, 1994 meeting, by itself, did not convert an otherwise noncustodial situation into a custodial arrest. *See id.* at 642.

Thus, because David Drake was not in custody during any of his encounters with the government agent, he was not entitled to the Fifth Amendment protections recognized in *Miranda* and *Edwards*. *United States v. LaGrone*, 43 F.3d 332, 338–39 (7th Cir.1994) (holding that a suspect cannot invoke *Miranda* rights outside the context of a custodial interrogation); *Vega*, 72 F.3d at 516; *see also United States v. Hines*, 963 F.2d 255, 256 (9th Cir.1992) (holding defendant's reference to his lawyer during the interview could not be an invocation of his *Miranda* rights because he was not in custody at the time).[2]

 Likewise, while David Drake contends that the subsequent government-initiated encounters violated his Sixth Amendment right to counsel, he alleges no facts in support of this contention. The Sixth Amendment right to counsel does not attach until a "prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *McNeil*, 501 U.S. at 175, 111 S.Ct. at 2207 (quoting *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984)). His statements preceded the indictment in this case by approximately one year, and there is no indication that this criminal proceeding was otherwise commenced prior to the indictment. Thus, the federal agent did not violate any Sixth Amendment right to counsel when she initiated the subsequent contacts.

 David Drake also contends that the agent's statements amounted to improper promises and inducements to secure an interview. The Due Process Clause of the Fifth Amendment prevents the government from introducing a criminal defendant's involuntary confession against him at trial. *United States v. D.F.*, 63 F.3d 671, 679 (7th Cir. 1995). A confession will be found to be

---

**2.** In appropriate circumstances, the court could consider a request for counsel in a non-custodial setting to the extent it relates to a claim of involuntariness. *Cf. United States v. Fazio*, 914 F.2d 950, 956 (7th Cir.1990); *United States v. Serlin*, 707 F.2d 953, 958 (7th Cir.1983) (considering agents' persistence in questioning suspect

in the face of his stated desire not to cooperate with the agents in determining the voluntariness of his statement). Here, however, David Drake's stated desire to consult with his attorney, as in *Barrett*, was not an invocation of counsel; rather, it was merely a limited request for counsel before he would agree to sign a written statement.

voluntary "only if the government can demonstrate that, under the totality of the circumstances and by a preponderance of the evidence, it was not secured by the government through psychological or physical intimidation, but rather was the product of a rational intellect and free will." *Id.* Some variation of government overreaching must be present before a defendant's confession can be labeled involuntary and subsequently suppressed. *Id.* (citing *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)). In evaluating whether the interrogator engaged in overreaching, the proper test is "whether the interrogator resorted to tactics that in the circumstances prevented the suspect from making a rational decision whether to confess or otherwise inculpate himself." *United States v. Baldwin,* 60 F.3d 363, 365 (7th Cir.1995).

 The agent's alleged comments to the effect that she needed to take a statement and that it was the best thing for him to do, standing alone, simply are not the type of statements which would constitute improper overreaching as the comments themselves are innocuous and do not imply any promises of leniency or any other promise of consideration. David Drake's additional allegation that the agent misled him with respect to the use of an oral statement, however, is somewhat of a concern to the court. Although David Drake did not allege this fact in his motion or original brief, and he raises it in a rather irregular fashion (i.e. via a reply brief), the court will consider this factual allegation. While law enforcement agents may employ some degree of trickery in obtaining a confession, a deceptive practice that distorts the suspect's rational choice might, in the totality of the circumstances, render the confession involuntary. *See Holland v. McGinnis,* 963 F.2d 1044, 1051–52 (7th Cir. 1992); *United States v. Anderson,* 929 F.2d 96, 100–01 (2d Cir.1991); *see also* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 6.2 (1984) (misrepresentations of law can render confession involuntary). The fact

that David Drake was not in custody and was given *Miranda* warnings might be a distinguishing feature in this case. Nonetheless, the court in its discretion will not resolve this issue on the record before it and shall conduct an evidentiary hearing, pursuant to David Drake's oral request, for the limited purpose of determining the voluntariness of his statement.[3] Accordingly, the court reserves ruling on the issue of voluntariness.

### III. DISCOVERY MOTIONS

Both defendants have filed separate motions for discovery. Since some of defendants' requests are not opposed by the government, they require no discussion. Pursuant to the agreement of the parties, therefore, the government shall disclose the following documents in a timely fashion: (1) any and all documents pertaining to the method and calculation of liquidated damages assessed against David and Jeffrey Drake; (2) any and all notes made by law enforcement agents and/or ASCS personnel pertaining to statements made by David and Jeffrey Drake during the years 1992, 1993, 1994 and 1995; (3) any and all written notes contemporaneously made at Stephenson County ASCS Committee meetings regarding Jeffrey Drake's loans for the years 1992, 1993 and 1994; and (4) any and all contemporaneous written notes of any alleged statements made by Jeffrey Drake at such meetings. Defendants shall notify the court by motion should the parties be unable to agree on the timing of these disclosures. As to defendants' remaining requests, the court shall discuss each request by category.

 Both defendants seek disclosure of documents relating to other farmers who participated in the same government program as defendants. The government characterizes these requests as being sought in relation to a claim of selective prosecution. As neither defendant quibbles with this characterization, the court assumes that they

---

**3.** To be entitled to an evidentiary hearing, a defendant must demonstrate that there are disputed facts which are material to the issues before the court. *United States v. Rodriguez,* 69 F.3d 136, 141 (7th Cir.1995); *United States v.*

*Randle,* 966 F.2d 1209, 1212 (7th Cir.1992). While David Drake has not contested any of the government's factual representations, his last allegation does raise a factual conflict which arguably requires resolution by the court.

each seek these documents in connection with such a claim.

 A selective prosecution claim is not a defense on the merits to the criminal charge itself; it is an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution. *United States v. Armstrong*, ── U.S. ──, ──, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996). A defendant seeking an order compelling discovery on an issue of selective prosecution must first make a threshold showing that he has a colorable basis for the claim. *United States v. Heidecke*, 900 F.2d 1155, 1158 (7th Cir.1990); *United States v. Kerley*, 787 F.2d 1147, 1150 (7th Cir.1986). While he need not make a "complete prima facie case" of selective prosecution, he must at least introduce "some evidence tending to show the existence of the essential elements of the defense." *Kerley*, 787 F.2d at 1150. The essential elements to a claim of selective prosecution are the following: (1) defendants were singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights. *United States v. Cyprian*, 23 F.3d 1189, 1195 (7th Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 211, 130 L.Ed.2d 139 (1994). As to the first element, a defendant *must* present some evidence that similarly situated defendants of other classifications could have been prosecuted, but were not, before he is entitled to an order compelling discovery. *Armstrong*, ── U.S. at ──, 116 S.Ct. at 1488. Neither of defendants' requests are accompanied with the allegation that they were selectively prosecuted nor is there any evidence submitted that tends to show the existence of either element. Accordingly, defendants' requests for information relating to other farmers who were involved in the same government program are denied.

 David Drake requests, pursuant to the Jencks Act ("Act"), 18 U.S.C. § 3500, disclosure of "any and all notes made by law enforcement agents regarding interviews of witnesses in this case." The government opposes such request, and further represents (and David Drake does not contest) that it has already produced witnesses' statements and typewritten memoranda of these interviews.

 As an initial matter, a defendant does not have a right to pretrial disclosure of Jencks material. A district court may only order disclosure of such material after a witness called by the government has testified on direct examination. *See* 18 U.S.C. § 3500(b). Once the witness has testified on direct examination, and upon a motion by the defendant, a district court can order the government to produce any statement of the witness in the possession of the government which relates to the subject matter as to which the witness testified. *Id.* The Act defines a statement as any one of the following:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). In determining whether material is producible under the Act, the emphasis clearly is on "whether the statement can fairly be deemed to reflect fully and without distortion the witness's own words." *United States v. Morris*, 957 F.2d 1391, 1401 (7th Cir.), *cert. denied*, 506 U.S. 941, 113 S.Ct. 380, 121 L.Ed.2d 290 (1992); *United States v. Allen*, 798 F.2d 985, 994 (7th Cir.1986). A government agent's summary of a witness' oral statement that is not signed or adopted by the witness is not producible. *Allen*, 798 F.2d at 994. The reason for this is that summaries, by their nature, are not "substantially verbatim" recitals and would not constitute a statement as defined by section 3500(e)(2), and absent some kind of adoption by the witness, would not constitute a statement as defined by section 3500(e)(1). Conceivably, when a government agent takes notes during an interview, those notes could contain statements as defined by section 3500(e)(2) if they are "substantially verba-

tim" even though they are not adopted by the witness, as section 3500(e)(2) contains no requirement that the statement be adopted. *See Campbell v. United States,* 365 U.S. 85, 94, 81 S.Ct. 421, 426, 5 L.Ed.2d 428 (1961).[4] In addition, while a federal agent's written impression of what a witness said, his strategy or his conclusions from what the witness said are not statements of the witness, they might be statements of the agent if the agent is a witness and testifies about the subject matter of that report. *Allen,* 798 F.2d at 994.

 Generally, if a defendant claims that the documents he seeks are statements as defined by the Act, a presumption arises in favor of the district court conducting an in camera inspection of the documents. In order to trigger this presumption in favor of an in camera inspection, the defendant "need only have a reasonable argument that if the document says what he believes it says, based on the testimony of the witness on direct examination, then it can possibly be used to impeach that witness." *Allen,* 798 F.2d at 995. In addition, before a district court can reach the issue of whether the document is a statement as defined by the Act, it must be requested with sufficient specificity. *Id.* at 996. A defendant can achieve this by establishing (normally by cross-examination of the witness at trial) that a certain document exists, that there is a reason to believe that the document is a statutory statement and that the government failed to provide it. *Id.*

In this case, David Drake has not laid an adequate foundation in order to trigger the presumption in favor of an in camera inspection for several reasons—the first and most obvious in light of the preceding discussion being that his request precedes trial. Moreover, his request is far too broad, as it fails to specify the particular witness as well as identify the specific document in question. Thus, not only is the request premature, it lacks sufficient specificity and particularity. Accordingly, David Drake's request for the handwritten notes is denied at this time. Any renewed request should be made at trial upon laying an adequate foundation for a specific document.

## CONCLUSION

For the foregoing reasons, defendants' separate motions to dismiss the indictment are denied and their separate motions for discovery are granted in part and denied in part. The court reserves ruling on David Drake's motion to suppress pending an evidentiary hearing which shall be held on June 19, 1996 at 1:30 p.m. Co-defendant, Jeffrey Drake, need not be present for this hearing if he so chooses.

---

**4.** In *United States v. Herrero,* 893 F.2d 1512, 1524 (7th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990), the Seventh Circuit found no clear error in the district court's refusal to conduct an in camera review of the agents' notes on the basis that the witness did not adopt or approve of the notes taken. That case did not have the occasion to address the issue of whether the notes contained a statement as defined by section 3500(e)(2); thus, it is limited to the issue of whether the notes contained a statement as defined by section 3500(e)(1). While the difference between the two subsections has sometimes been blurred in this circuit, *see, e.g., United States v. Lopez,* 6 F.3d 1281, 1288–89 (7th Cir.1993), the distinction nonetheless has been recognized, *see United States v. Morris,* 957 F.2d 1391, 1402 (7th Cir.1992). Other circuits have addressed the distinction in more detail. *See, e.g., United States v. Neal,* 36 F.3d 1190, 1198 (1st Cir.1994) (holding that section 3500(e)(2) encompasses a longhand writing which fairly follows the witness' words, subject to minor, inconsequential errors); *United States v. Pierce,* 893 F.2d 669, 675 (5th Cir.1990); *United States v. Minsky,* 963 F.2d 870, 875–6 (6th Cir.1992).