THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ADAM J. MILESTONE, Defendant-Appellant.

Third District No. 3—94—0033

Opinion filed September 12, 1996.

Kenneth D. Brown (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Nancy Rink Carter (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

The defendant, Adam J. Milestone, was convicted, following a jury trial, of three counts of murder in violation of section 9—1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/9—1(a) (West 1992)) and one count of robbery in violation of section 18—1 of the Code (720 ILCS 5/18—1 (West 1992)). He was sentenced to a term of 45 years' imprisonment on one count of murder (felony murder); no judgment was entered on the remaining counts. We reverse and remand for a new trial for the reasons discussed below.

On appeal, the defendant asserts that: (1) he did not validly waive his right to counsel, because the police did not inform him that an attorney retained for him was attempting to contact him by telephone and because they refused to allow the attorney to speak to him by telephone; and (2) the trial court erred in using modified pattern jury instructions on the charges of knowing and intentional murder.

Prior to trial, the defendant filed a motion to suppress a confession he gave to the police during interrogation, which was denied.

The following evidence was presented at the pretrial hearing. Detective Larry Hawkins of the Peoria County sheriff's office testified that he and Detectives Tom Yentes and Harry Sweet went to the defendant's mother's residence at approximately 8:45 p.m. on the evening of July 20, 1993, as part of his investigation of the death of

William Swearinger. The defendant was not present when the police approached his mother. Shortly after the detectives began to talk to her, the defendant approached the front yard. Hawkins identified himself and asked the defendant if he would be willing to accompany the officers to the police station to answer some questions concerning an investigation they were conducting. The defendant agreed to do so. Yentes and Sweet took the defendant to the station while Hawkins made a brief stop elsewhere.

Yentes later testified that the defendant and the two detectives arrived at the police station at approximately 9:10 p.m. Yentes took the defendant to an interrogation room and began to interrogate him regarding Swearinger's death.

Hawkins testified that he arrived at the station at approximately 9:45 p.m. At approximately 10 p.m., Hawkins received a telephone call from a person who identified himself as James Shadid. Shadid told Hawkins that he was an attorney and then asked if the defendant was there. Hawkins told him that the defendant was present at the station. Shadid next asked Hawkins if the defendant was being questioned, and Hawkins answered in the affirmative. Shadid then asked to speak to the defendant. Hawkins refused, saying "No, he's being interviewed right now; I'm not going to interrupt the interview." Shadid then asked Hawkins if the defendant had been advised of his *Miranda* rights, and Hawkins indicated that the defendant had been so advised. Shadid then asked if the defendant had asked to speak to an attorney, and Hawkins said that he had not. Hawkins testified that Shadid then said, "I guess that's all I can do," and hung up.

Hawkins testified that it was his opinion that Shadid was not representing the defendant, but was merely calling to seek information about the defendant on behalf of a friend, the defendant's mother. On cross-examination, however, Hawkins admitted that the questions asked by Shadid were typical of those asked by an attorney who is representing someone. He further stated that he did not inform the defendant of Shadid's call because he did not want to "beg him to run to an attorney." Hawkins testified that his purpose was "to obtain a confession" and he expected that if Shadid were allowed to talk to the defendant, he would tell the defendant not to continue the interrogation. Hawkins believed that allowing Shadid access to the defendant would defeat their purpose of obtaining a confession.

Shadid testified that at approximately 10:30 p.m. on July 20, 1993, the defendant's mother called him at his home, told him that the defendant had been taken in for interrogation by the police, and retained him to represent her son. Shadid then called the sheriff's

department and was told that Detective Hawkins was in charge of the case. Shadid then called Hawkins, identified himself to Hawkins and asked to speak to his client, Adam Milestone. Hawkins told Shadid that the defendant was being interviewed and that the interview would not be interrupted. Shadid asked if the defendant had been given *Miranda* warning, and Hawkins said that he had. Shadid asked if the defendant had asked for an attorney and Hawkins said that he had not. Shadid then asked Hawkins to tell the defendant that Shadid wished to speak to him. Hawkins said that he would not. Shadid again asked to speak to the defendant, and again was told by Hawkins that he could not speak to the defendant. Hawkins said that he would let the defendant speak to Shadid only if the defendant specifically asked to speak to him. Shadid then terminated the conversation.

Shadid further testified that he considered the defendant to be his client because the defendant's mother had asked him to represent her son. He often made contact with clients by calling the station and asking to speak to them, and he could not recall ever having been denied access to a client in this manner in the past. He believed that a telephone call to speak to his client was more appropriate than travelling to the place where the defendant was being interrogated as travelling to that location would take over 20 minutes.

The defendant testified that, as he stood in front of his mother's house before he was taken in for questioning, his mother asked him if she wanted him to contact her attorney, Jim Shadid, and he said yes. He also testified that he was not informed of his rights until after he gave a written statement, and that when Hawkins first came into the room, he asked Hawkins if his mother had contacted an attorney yet. Hawkins responded that she had not.

The circuit court denied the motion to suppress, finding that *People v. Griggs*, 152 Ill. 2d 1 (1992), was controlling. In reaching its decision, the circuit court made a factual determination that the defendant did not know that an attorney had been retained for him.

The issue in this matter is whether the trial court erred in denying the defendant's pretrial motion to suppress his confession where the police denied an attorney, retained for the defendant without his knowledge, access to the defendant *by telephone* during the interrogation, and where the police did not inform the defendant that the attorney was seeking to consult with him *by telephone*.

■ Our supreme court, in *People v. McCauley*, 163 Ill. 2d 414 (1994), squarely held that a defendant's right against self-incrimination guaranteed by article I, section 10, of the Illinois Constitution of 1970 was violated where the police denied an attorney, retained for the defendant without his knowledge, *physical* access to

the defendant during the interrogation, and where the police did not inform the defendant that the attorney was seeking to consult with him *at the police station.*

■ In the matter *sub judice* we are asked to determine whether the attorney must be physically present at the police station in order for *McCauley* to apply. We hold that the physical presence of the attorney at the police station is not required, and *McCauley* applies when the attorney is attempting to contact the defendant by telephone, but is prevented from doing so by the actions of the police.

While our supreme court in *McCauley* did not directly address the question of telephonic communication by counsel, the court nonetheless made clear that its paramount concern was that police not actively prevent a person under interrogation from having access to the readily available assistance of counsel. As the court noted:

"The day is long past in Illinois, however, where attorneys must shout legal advice to their clients, held in custody, through the jailhouse door. *** Our State constitutional guarantees simply do not permit police to delude custodial suspects, exposed to interrogation, into falsely believing they are without immediately available legal counsel and to also prevent that counsel from accessing and assisting their clients during the interrogation." *McCauley,* 163 Ill. 2d at 423-24.

We find persuasive the appellate court's statement in *People v. McCauley,* 228 Ill. App. 3d 893 (1992):

"[W]e do not believe that it should be necessary to distinguish between situations (1) where the attorney is present at the police station and reasonably informs the police that he represents the suspect and (2) where the attorney reasonably informs the police telephonically that he represents the suspect. The key factor should be whether the attorney has reasonably informed the police that he represents the suspect and not the methodology by which the police are informed." 228 Ill. App. 3d at 897-98.

We are not persuaded by the People's assertion that the police would be unduly burdened in their work by being required to verify that a person calling and claiming to be an attorney was, in fact, an attorney. Some method of verification, such as the use of an attorney's identification number issued by the Attorney Registration and Disciplinary Commission, could be used to identify properly licensed attorneys. In any event, we do not see this minor administrative problem as a legitimate reason for denying a right guaranteed by our constitution.

In short, we do not believe that whether the actions of the police in denying a defendant access to his or her attorney violate the Illinois Constitution should turn on the attorney's method of com-

munication. Police who actively prevent individuals from exercising their constitutional rights are an anathema to our system, and Hawkins' bold assertion that his goal was to keep Shadid and the defendant apart so that the defendant would not seek counsel is a glaring example of the kind of police behavior from which the Illinois Constitution protects its citizen. Our supreme court, in *McCauley*, aptly warned us to beware of such police practices:

> "No system worth preserving should have to fear that if an accused is permitted to consult with a lawyer, he will become aware of, and exercise, [his] rights. *** [Citations.] If our system is, indeed, such a system, we have no reason to fear both lawful and protected consultation." 163 Ill. 2d at 446.

We find that the trial court erred in not suppressing statements made by the defendant after Shadid asked to speak with him by telephone. We reverse and remand on that basis.

■ The defendant also maintains on appeal the court erred in giving an improper jury instruction. We find the defendant has waived this issue by failing to object to the challenged instruction and failing to offer his own instruction at trial. *People v. Almo*, 108 Ill. 2d 54 (1985).

■ Finally, although the defendant did not raise on appeal the sufficiency of the evidence to sustain a conviction, we will consider the sufficiency of the evidence in order to protect defendant's constitutional right against double jeopardy. *People v. Reynolds*, 257 Ill. App. 3d 792, 806 (1994). Although we are not making a finding as to defendant's guilt or innocence that will be binding in a new trial, we conclude that the evidence presented at trial, including improperly admitted evidence, was sufficient for a jury to decide that defendant was guilty beyond a reasonable doubt. See *People v. Olivera*, 164 Ill. 2d 382 (1995) (for purposes of double jeopardy, all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence.)

Accordingly, the trial court's order denying defendant's motion to suppress is reversed. Defendant's conviction is also reversed and the case is remanded for a new trial and such further proceedings as the trial court shall determine. At a new trial, statements made to the police officers and assistant State's Attorney before Hawkins received Shadid's telephone call at the police station, if any, shall be admissible based upon the *McCauley* decision.

Reversed and remanded.

McCUSKEY and SLATER, JJ., concur.