THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHADRACH PITCHFORD, Defendant-Appellant.

First District (2nd Division)   No. 1—96—2120

Opinion filed May 30, 2000.

Charles K. Piet, of Charles K. Piet & Associates, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Judy L. DeAmgelis, and Carol L. Gaines, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

The defendant, Shadrach Pitchford, was convicted of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1992)), at-

tempted first degree murder (720 ILCS 5/8—4, 9—1 (West 1992)) and first degree murder (720 ILCS 5/9—1(a)(2) (West 1992)). On appeal, the defendant argues that the trial court erred in denying his motion to suppress statements because the attorney who was retained for him was not present during his interrogation by the police and that the trial court abused its discretion by improperly limiting the impeachment of a key prosecution witness. For the reasons discussed below, we affirm.

## FACTS

The relevant events in this case grew out of the arrest of the defendant for the shooting death of Anthony Crothers. Before trial the defendant made a motion to suppress statements he made while in police custody, which was denied by the trial court. The defendant was tried before a jury and was represented by counsel. He was convicted of aggravated discharge of a firearm, attempted first degree murder and first degree murder.

At the pretrial suppression hearing Gregory Moore testified that he is a police officer with the Bellwood police department. Moore averred that on October 10, 1993, he learned the identity of the defendant, who had not yet been arrested. The next day he received a call from Mary Jackson, who identified herself as an attorney for the defendant. Jackson advised Moore that she would bring the defendant into the police station to turn himself in the next day. However, neither Jackson nor the defendant arrived at the police station on October 12, 1993; consequently, Officer Moore telephoned Jackson's office but was unable to reach her. Jackson returned Moore's call later that day and stated that she could not locate the defendant, but that she would try to bring him into the station the next day. On October 13, 1993, Jackson again telephoned Officer Moore to let him know that she did not know where the defendant was. Moore averred that during these conversations Jackson never asked him to call her immediately if the defendant was arrested, never told him not to question the defendant and never told him that she wanted to be present if the defendant was questioned. On October 14, 1993, defendant was arrested by an officer from the Forest Park police department, but he was later taken into custody by Bellwood police. Officer Moore read the defendant his *Miranda* rights when he was taken into custody by Bellwood, and the defendant signed a *Miranda* waiver.

Marianne Jackson testified for the defense that she is an attorney licensed in the State of Illinois. She averred that, before defendant was arrested, both defendant and his mother spoke to her and she became the defendant's attorney. On October 11, 1993, she spoke to

an officer at the Bellwood police department and told that officer that she was the defendant's attorney and that she wanted to surrender the defendant. Jackson and the officer agreed on a place and time and she told the officer that although she was surrendering her client, she did not want him to be questioned. She gave the officer her name and telephone number. The next day Jackson again spoke with the officer to let him know that she would not be able to surrender her client that day and they agreed that she could surrender him the next day. The defendant failed to meet Jackson for the surrender on that day and she spoke with the Bellwood police officer again to inform him that the defendant did not show up. Jackson averred that the officer said that he would let her know when they picked up the defendant, but she could not recall if she again instructed him not to question the defendant. Jackson stated that she never appeared at the Bellwood police department in connection with this matter.

Leroy Jacobs testified for the State that he was the investigative division commander for the Bellwood police department on October 15, 1993. At about 1 o'clock in the morning Jacobs had Investigator Blazina bring the defendant from the cell area into his office. Jacobs testified that while he had heard that an attorney had called before the defendant was arrested and offered to surrender the defendant, he had no knowledge that an attorney had been retained on the defendant's behalf, and he did not receive any telephone calls or other information indicating that a lawyer was at the station who wanted to see the defendant. Jacobs allowed the defendant to make a telephone call. Jacobs averred that he did not know whom the defendant called.[1] After making the call, the defendant told Jacobs that he would "tell [him] about it." Jacobs asked the defendant if he was going to say that he shot the man on 25th Avenue. The defendant said "yes" and Jacobs told him to wait, because he wanted him to talk to Investigator Blazina. Jacobs then took the defendant to Blazina's office.

Richard Blazina testified for the State that he is a detective with the Bellwood police department. Blazina averred that during his shift from 5 p.m. to 1 a.m. on the night of October 15, 1993, he did not receive any information that there was a lawyer at the station who wanted to see the defendant. He was aware that an attorney had called the station about surrendering the defendant. At around 1 a.m. he brought the defendant from his cell to Jacobs' office. Jacobs later

[1]The defendant later testified that he called his girlfriend, who tried to connect his grandmother and then his lawyer through three-way calling without success; he also testified that he could not remember if he told Jacobs he was attempting to call his lawyer.

brought the defendant into Blazina's office and told Blazina that he had admitted to shooting the victim.

Blazina further stated that the defendant agreed to talk to the State's Attorney. The assistant State's Attorney, Barbara Bailey, read the defendant his *Miranda* rights. The defendant indicated that he understood each right and that he wanted to talk to her. The defendant then made a statement implicating himself in the death of Anthony Crothers. Bailey wrote out the statement, which was then signed by the defendant, Bailey and Blazina. The statement included a *Miranda* waiver. The defendant's motion to suppress was denied and the case proceeded to trial on the merits.

At trial the State called Nathaniel Jefferson, who testified that he lives with his girlfriend, that he has a conviction for possession of a controlled substance and that he was friends with Crothers, the deceased. He also averred that he had known the defendant for 17 or 18 years. On October 10, 1993, at around 4 o'clock in the morning, he was with Crothers at the Amoco gas station at 25th Avenue and St. Charles. He went to the cashier to make a purchase, while Crothers was cleaning the trunk of their car. When Crothers yelled "Nathan, look out," Jefferson turned and saw a man who was wearing a hood, had a scarf over part of his face and was aiming two guns at him. The man's face was exposed from his nose up to his eyes and Jefferson recognized him as the defendant. The defendant then began shooting and Jefferson ran. When Jefferson returned to the gas station, Crothers had been shot and was lying in the alley. Jefferson was the State's only eyewitness to the murder of Crothers.

Jefferson also testified that he had recently sustained a head injury which causes him to have difficulty remembering things. He further averred that he uses heroin, but that he was not using heroin on October 10, 1993, because he had recently been released from the hospital and was on medication. He had used drugs prior to October 10, 1993, and answered "yes" when asked if he was "using drugs now." While Jefferson was not permitted to state the last time he had used drugs, he averred that he had not used drugs within six hours of 9 a.m. that morning, but that he had used drugs within the past 24 hours.

Debra Bobo testified for the defense that she lives with Nathaniel Jefferson and that she was living with him on the day he testified. The State made several objections to Bobo's testimony regarding Jefferson's drug use which the trial court sustained. The defense made an offer of proof, pursuant to which Bobo testified that Jefferson uses drugs "every day and all day." She further stated that, when Jefferson is awake, a couple of hours usually pass between drug usages. On the

morning of his testimony, Jefferson called Bobo and spoke to her before he testified. She determined from that conversation that he was under the influence of drugs.

The defendant was convicted of aggravated discharge of a firearm, attempted first degree murder and first degree murder. He was sentenced to 75 years in prison for murder, 60 years for attempted murder, and 30 years for aggravated discharge of a firearm. This appeal followed.

## ANALYSIS

Defendant first argues that his conviction should be reversed because the trial court erred in denying his motion to suppress where an attorney retained for him informed the police in advance of his arrest that she was the defendant's attorney but she did not show up at the police station during the questioning of the defendant. The State responds that the trial judge properly denied the motion to suppress because the defendant never invoked his right to counsel and his attorney was never denied access to the defendant by the police. We agree with the State.

■ In reviewing a motion to suppress, absent "a determination that the trial court's finding was manifestly erroneous, we will not disturb it." *People v. Matthews*, 306 Ill. App. 3d 472, 482, 714 N.E.2d 98, 105 (1999). "It is the function of the trial court to determine the credibility of the witnesses and to resolve any conflict in their testimony." *Matthews*, 306 Ill. App. 3d at 482. "Upon review, once a defendant is found guilty of a crime, all of the evidence is to be considered in a light most favorable to the prosecution." *People v. Morgan*, 142 Ill. 2d 410, 439, 568 N.E.2d 755, 763 (1991), *rev'd on other grounds*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992). "A defendant's right against self-incrimination is guaranteed by the fifth and fourteenth amendments of the United States Constitution and by article I, section 10, of the Illinois Constitution of 1970. This right includes the right to an attorney." *People v. McCauley*, 163 Ill. 2d 414, 421, 645 N.E.2d 923, 928 (1994). The defendant may waive his right to an attorney "provided that the waiver is voluntary, knowing and intelligent." *McCauley*, 163 Ill. 2d at 421.

■ The State apparently argues that based on *People v. Matthews* we can dispose of this issue by merely affirming the trial court's credibility determination and its resultant findings of fact. The *Matthews* court held that where there was conflicting testimony as to whether the defendant asked for an attorney, as to whether the defendant's attorney told the police that he represented the defendant, and as to whether they were told not to question the defendant, it was not an

abuse of discretion for the court to refuse to suppress the defendant's confession. At the motion hearing in *Matthews*, the defendant's attorney, Barry Schmarak, testified that he telephoned the police to inform them that the defendant would surrender the next day. The defendant did not show up to surrender; however, his attorney testified that he told Detective Samuel that he represented the defendant, that the police were not to interrogate the defendant if they arrested him and that he wanted to be present during any interrogation of the defendant. The defendant was later arrested and gave a statement implicating himself. Detective Samuel testified that the defendant waived his *Miranda* rights and that his attorney never admonished him not to interrogate the defendant. Samuel gave conflicting testimony as to whether Schmarak told him that he represented the defendant. The defendant testified that he told the police he wanted his lawyer present during questioning. The defendant moved to suppress his statement and his motion was denied. On appeal the court reasoned that it was up to the trial judge to resolve the conflicts in the testimony and that it could not conclude that his findings were against the manifest weight of the evidence.

This case is similar to *Matthews* in several respects. In the subject case, the trial court did not find the defendant's testimony that he requested a lawyer to be credible. Moreover while Jackson testified that she told a police officer not to interrogate the defendant in the event that he was arrested, Detective Moore testified that he was never told by Jackson not to question the defendant. Although the trial court did not explicitly rule on the relative credibility of Jackson and of Detective Moore, we must view the evidence in the light most favorable to the State. Viewed in that light, we must defer to the trial court's findings as to whether defendant's attorney ever instructed the police not to interrogate him[2] and as to whether the defendant ever requested an attorney. However, *Matthews* is nevertheless distinguishable from the case at bar in that in the *Matthews* facts there was conflicting testimony as to whether the attorney told the police that he represented the defendant. In the subject case, Jackson's testimony that she told the Bellwood police officer with whom she spoke that she

---

[2]We need not decide how the analysis in this case would be different if the testimony of the defendant's attorney that she instructed the police not to question the defendant were uncontradicted, and we express no opinion on this question. We therefore decline to address the question as to whether a request by an attorney in advance of a defendant's arrest that the defendant not be questioned when arrested would constitute a valid invocation of defendant's right to counsel.

was the defendant's attorney is uncontradicted. Because of this distinction, *Matthews* cannot be viewed as fully dispositive of the result in this case and therefore we must reach the defendant's argument.

The defendant argues, relying heavily on *People v. McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923 (1994), that since the police knew that he was represented by an attorney, his right to counsel under the Illinois Constitution was violated because the police interrogated him without his attorney present. We believe that defendant's reliance on *McCauley* is misplaced.

In *McCauley* our supreme court held that where the defendant's attorney came to the police station where the defendant was held while under interrogation, the refusal of the police to allow the attorney access to the defendant or to tell the defendant that the attorney was present violated the defendant's right to counsel under the Illinois Constitution. The police in *McCauley* brought the defendant to the police station and began to interview him, after advising him of his *Miranda* rights. The defendant did not ask for a lawyer or state that his family would procure one for him. The defendant's attorney testified that he was contacted by the defendant's family; he proceeded to the police station and asked to see the defendant. A police officer refused to allow him to see the defendant and also refused to tell the defendant that he was at the police station. The police officer testified that he did not refuse to allow the attorney access to the defendant. The trial court found that the attorney was credible and that the police officer was not. Accordingly, the court suppressed the inculpatory statement that the defendant made during interrogation.

On appeal, the court held that, while the defendant's right to counsel under the United States Constitution was not violated, the motion to suppress was properly granted because the police violated the defendant's rights under the Illinois Constitution. The court stated:

> "Regardless of the United States Supreme Court's *current* views on waiver of the right to counsel under the Federal Constitution, the law in Illinois remains that 'when police, prior to or during custodial interrogation, refuse an attorney appointed or retained to assist a suspect access to the suspect, there can be no knowing waiver of the right to counsel if the suspect has not been informed that the attorney was present and seeking to consult with him.' "

(Emphasis in original.) *McCauley*, 163 Ill. 2d at 424-25, quoting *People v. Smith*, 93 Ill. 2d 179, 189 (1982).

The court also stated:

> "Our State constitutional guarantees simply do not permit police to delude custodial suspects, exposed to interrogation, into falsely

believing that they are without immediately available legal counsel and to also prevent that counsel from accessing and assisting their clients during the interrogation." *McCauley*, 163 Ill. 2d at 423-24. Thus, under *McCauley*, the police may not deny an attorney access to his client during custodial interrogation and may not refuse to inform a suspect undergoing such interrogation that there is legal counsel immediately available to him. However, the holding in *McCauley* does not extend to this case.

Here in the subject case there is no evidence to suggest that Jackson, the defendant's attorney, was immediately available to the defendant or that the police deluded the defendant "into falsely believing that [he was] without immediately available legal counsel." *McCauley*, 163 Ill. 2d at 423-24. There is also no evidence to suggest that she was ever denied access to the defendant. Granted, Jackson told the police that she was the defendant's attorney before the defendant was arrested; however, such a statement is not analogous to an attempt by an attorney to contact his client while the client is undergoing interrogation. There is no contention that Jackson was present at the police station during defendant's interrogation or that she attempted to contact the defendant while he was being held at the police station or that she was otherwise immediately available to him. In fact the evidence presented, including the testimony of Jackson, is to the contrary. Thus it can hardly be said that the police denied Jackson access to the defendant during custodial interrogation where she never attempted to gain access to him during that interrogation.

The defendant apparently suggests that the holding in *McCauley* required the police to notify his attorney of his interrogation. We disagree. *McCauley* holds that the police may not deny an attorney access to his client and may not refuse to inform a custodial suspect that an attorney is seeking *immediate* access. We do not believe the mere fact that a police officer at the Bellwood police department had been informed that defendant had an attorney and knew that attorney's name and telephone number requires the police to contact that attorney where that attorney was neither present during interrogation nor sought telephone access to the defendant at that time. Such a holding would go well beyond the scope of the holding in *McCauley*. See *People v. Milestone*, 283 Ill. App. 3d 682, 671 N.E.2d 51 (1996) (discussed below).

Extending the *McCauley* rule to situations such as the instant case would place an undue burden on the police. Such a holding would impose a duty upon the police before undertaking any interrogation of a prisoner in their custody to contact the defendant's attorney if they were aware that he had an attorney. While that duty may not seem

overly burdensome under the facts of the case at bar, it would set a troubling and problematic precedent. In order to avoid violating the defendant's rights under such a regime, the police would have to keep track of which suspects had retained counsel. Such a requirement would be especially burdensome if the knowledge of one police officer that a defendant was represented by counsel was imputed to the other officers in the department. For these reasons we decline the defendant's invitation to extend the *McCauley* rule to the case at bar.

Defendant's reliance on *People v. Milestone*, 283 Ill. App. 3d 682, 671 N.E.2d 51 (1996), is equally misplaced. Defendant contends that *Milestone* extends the *McCauley* holding to situations where the attorney is not physically present at the interrogation site. *Milestone* applies to situations where an attorney attempts to gain access to the defendant by telephone and is denied access by the police. The attorney in *Milestone* placed a telephone call to a police station where his client was in custody and being interrogated, expressly seeking access during the interrogation. The attorney asked the officer in charge of the case to allow him to speak with the defendant. The officer refused the attorney's request, stating that he would not interrupt the interview. While the *Milestone* court held that the defendant's right to counsel under the Illinois Constitution was violated, *Milestone* is distinguishable from the instant case for the same reason that *McCauley* is. In both cases, the attorney was immediately available to the defendant and the police both denied the attorney access to the defendant and refused to inform the defendant of counsel's immediate availability. In the case at bar, however, Jackson was not immediately available to the defendant by telephone or by physical presence at the police station. The police never denied Jackson access to the defendant and never refused to inform the defendant of her immediate availability.

■ Defendant's second argument is that his conviction should be reversed because the trial court abused its discretion by limiting defendant's impeachment of Nathaniel Jefferson in regard to his drug use. In support, defendant argues that Jefferson was not allowed to state when he last used drugs and that Debra Bobo was precluded from testifying as to Jefferson's drug use. The State replies that Bobo was not able to provide testimony of an impeaching nature. While we do not agree with the State's position that most of Bobo's testimony was not of an impeaching nature, we also disagree with the defendant's position that the trial court abused its discretion.

"It is well settled that narcotics addiction has an important bearing upon the credibility of a witness, and counsel may use legitimate methods to attack the credibility of such a witness." *People v. Crisp*, 242 Ill. App. 3d 652, 659, 609 N.E.2d 740, 745 (1992). The "admission

of evidence is a matter within the discretion of the trial court, and evidentiary rulings will not be reversed absent an abuse of discretion." *Fettson v. James*, 298 Ill. App. 3d 77, 82, 697 N.E.2d 1131, 1134 (1997).

We disagree with the defendant's contention that Bobo was improperly prevented from giving testimony of an impeaching nature. Her testimony during the offer of proof that Jefferson used drugs on the morning of his testimony was not based on her personal observation of his drug use. She, a lay person, merely spoke with the defendant on the telephone and determined from the tenor of the conversation that he had used narcotics that morning, a determination a jury is capable of ascertaining for itself.

However, in the offer of proof, Bobo also testified that Jefferson uses drugs "every day and all day" and that he uses drugs every couple of hours when he is awake. Such testimony has relevance to the extent of Jefferson's addiction to drugs.

Even so, the jury in the subject case had sufficient information to make a discriminating appraisal of Jefferson. Jefferson testified that he uses heroin, which he ingests through his nose. He answered "yes" to the question "are you using drugs now," but he also stated that he did not use drugs before coming to court that day to testify. Jefferson averred that he did not use drugs within six hours before 9 o'clock that morning, but that he had used drugs within the past 24 hours. Jefferson also testified that he was not using drugs on the date of the shooting because he had been recently released from the hospital and was taking medication. He did admit, however, to heroin use prior to the date of the shooting. Since testimony of Jefferson's drug use was otherwise presented, we do not believe that prejudice resulted from the exclusion of Bobo's testimony on that point. Thus, we cannot agree that the trial court abused its discretion in excluding additional testimony of Jefferson's drug use, even if some of it was of an impeaching nature.

The case of *People v. Weatherspoon*, 265 Ill. App. 3d 386, 637 N.E.2d 651 (1994), is analogous. In *Weatherspoon*, the court held that where cross-examination of the victim regarding her failure to complete drug treatment and other matters related to her addiction was excluded but cross-examination regarding her drug and alcohol addictions was allowed, the defendant was not denied his sixth amendment right to confrontation. The victim in *Weatherspoon* admitted to being addicted to alcohol, to consuming six drinks on the evening in question, to using alcohol and cocaine together and to being hospitalized for alcohol and cocaine dependency. However, the court did not permit the defendant to elicit testimony on cross-examination that the victim did not complete drug treatment. The defendant argued that

this exclusion left the jury with the impression that the victim was no longer addicted, thus diminishing his theory of consent and depriving him of his constitutional right to confrontation. The court reasoned that if "the entire record indicates the jury was made aware of adequate factors concerning relevant areas of impeachment of the witness, no constitutional question arises merely because the defendant was precluded from pursuing another line of questioning." *Weatherspoon*, 265 Ill. App. 3d at 393. The court held that the jury had sufficient information to make an appraisal of the victim and that the defendant's right to confrontation was not violated. Like the facts in *Weatherspoon*, the jury in the instant case heard testimony about Jefferson's drug use. The mere fact that other such testimony was excluded does not mean that the jury was without sufficient information to evaluate Jefferson's credibility. See also *People v. Givens*, 135 Ill. App. 3d 810, 825, 482 N.E.2d 211, 221-22 (1985) (where the first witness was cross-examined extensively about his drug use, but other witnesses were not permitted to testify to the drug use of the first witness, the court held that the jury had sufficient information about the drug use of the first witness to determine his credibility).

Defendant's reliance on *People v. Adams*, 259 Ill. App. 3d 995, 631 N.E.2d 1176 (1993), is misplaced. In *Adams* the trial court refused to allow cross-examination of a witness regarding his alleged drug use, and the appellate court reversed. The *Adams* court stated that "it has been held that the question as to whether a witness is a narcotics addict at the time of testifying or at the time an event occurred is a proper subject of cross-examination." *Adams*, 259 Ill. App. 3d at 1004. While we do not doubt the truth of this proposition, the fact remains that in *Adams* the trial court refused to allow the defendant to inquire into *any* aspect of the witness's drug use. On appeal, the court stated that the defendant was thus denied any opportunity to cast doubt on the testimony of that witness due to his drug use. The subject case is distinguishable in that significant information was produced regarding Jefferson's narcotics use, thus giving the defendant ample opportunity to cast doubt on Jefferson's testimony. *Adams* is inapposite.

*People v. Di Maso*, 100 Ill. App. 3d 338, 426 N.E.2d 972 (1981), is likewise inapposite. The *Di Maso* court held that the testimony of the defendant's psychologist regarding a witness' treatment for drug abuse was improperly excluded where the witness in question denied ever using narcotic drugs. The case at bar is distinguishable from the facts in *Di Maso*. In the case at bar Jefferson gave significant testimony of his drug use. The jury therefore had sufficient information to assess Jefferson's credibility without testimony from other witnesses regarding his use of narcotics.

Finally, even if Bobo's testimony was otherwise material and was erroneously excluded from the trial, the error would have been harmless in the face of defendant's self-inculpatory statement, which we have already held to be properly admissible. See *People v. Patrick*, 298 Ill. App. 3d 16, 29, 697 N.E.2d 1167, 1177 (1998).

Accordingly, for the reasons discussed above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McBRIDE, J., concur.