THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FENTON JONES, Defendant-Appellant.

Third District   No. 3—94—0395

Opinion filed November 19, 1996.

Peter A. Carusona (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and J. Paul Hoffmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a jury trial in the circuit court of Henry County, the defendant, Fenton Jones, was convicted of two counts of aggravated criminal sexual assault and sentenced to two concurrent eight-year terms of imprisonment. On appeal the defendant maintains that the trial court erred in denying his motion *in limine* wherein he sought to suppress certain written and oral statements he made to police investigators following a request for representation by counsel. We affirm.

## FACTS

The defendant was charged with committing acts of sexual penetration on his niece and stepdaughter, both of whom were approximately eight years old at the time the attacks allegedly occurred.

At the hearing on defendant's motion to suppress, Lieutenant Rod Huber of the Henry County sheriff's department testified that on July 28, 1993, he called the defendant at his work in Princeton, Illinois, and asked the defendant to meet him during defendant's lunch break. The defendant agreed and arrived at the Bureau County sheriff's office at 11:30 a.m., where he was met by Huber and Lisa Trevier, an investigator with the Illinois Department of Children and Family Services.

Huber advised the defendant of his *Miranda* rights, after which the defendant signed a written waiver of those rights. Huber then told the defendant that he and Trevier were investigating an allegation that the defendant had sexually molested S.J., the defendant's niece. The defendant denied the allegation, and shortly thereafter, Huber told the defendant he could leave. Before the defendant left, however, Trevier informed him that she was going to talk to his stepdaughter, A.S., and other children who resided in defendant's home.

After Huber and Trevier visited the defendant's home and

interviewed his wife, Melody Jones, and her children, Huber telephoned the defendant and requested that he agree to a second interview. The defendant agreed, and a second interview was held at the Bureau County sheriff's office shortly after 5 p.m. Huber and the defendant went to an interview room, and according to Huber, they were alone. Huber told the defendant that they needed to discuss a new allegation that the defendant had sexually molested his stepdaughter. When Huber began to advise the defendant again of his *Miranda* rights, the defendant stated that he wanted to have an attorney present.

Huber testified that, upon hearing the defendant ask for an attorney, he told the defendant there would be no more questions, that the defendant was not under arrest and that he was free to go. Huber then told the defendant that the case would still be under investigation, that it involved a serious charge, and that the defendant would be sent to prison if he was convicted. After hearing these remarks by Huber, the defendant broke down and cried and said that he wanted to talk. Huber told the defendant that he could not talk to the defendant because of his request for an attorney. Huber told the defendant to leave and come back later if he wanted to talk. Huber testified that at no time during the discussion did he yell or shout at the defendant.

Huber further testified that the defendant then left the building. A short time later, an officer told Huber that the defendant was back and wanted to talk to him. Huber met the defendant in the lobby and asked what he wanted. The defendant said he had gone out and given his car keys to a co-worker who, Huber surmised, had accompanied the defendant to the police station.

Huber, Trevier, the defendant and Officer James Whitko then went into an interview room. Whitko read the defendant his *Miranda* rights, and the defendant then executed a written waiver. Huber questioned the defendant, who admitted to acts of sexual penetration of both A.S. and S.J. Huber then took a written statement, and the defendant signed each page of the statement, as well as a written waiver form allowing them to transport him to Henry County.

The defendant's testimony at the suppression hearing contradicted Huber's testimony concerning what transpired after the defendant requested to speak to an attorney. The defendant testified that after his request Huber became angry and yelled at him. Furthermore, Huber told the defendant that he would be going to prison for a long time, maybe 30 years, that the defendant's wife and children did not want him around anymore, and that she had packed some of his clothes, which Huber had in his squad car.

The defendant testified that he then told Huber that a co-worker was waiting for him in his car. Huber told the defendant to give his car keys to the co-worker and tell him that the defendant would be there for a while. The defendant testified that he left the building to give his car keys to his co-worker and immediately returned to the building as Huber instructed. According to the defendant's testimony, Huber watched him from a window and was waiting for him at the door of the police station when he returned.

In denying the defendant's motion to suppress, the trial court made the following findings of fact: (1) Huber reacted to the defendant's request for counsel, not by yelling, but with "a different tone of voice"; (2) after the defendant indicated his desire to speak with an attorney, Huber told the defendant that the investigation would continue and the defendant could go to prison for a long time; (3) defendant left the building, spoke to the co-worker, then returned to the police station and asked someone to tell Huber that he wished to speak with him.

The court concluded that the defendant's request for counsel had been honored by Huber and that the defendant had reinitiated contact with the police by going back inside the police station and asking for Huber. The trial court noted that its ruling might have been different if the court found that Huber had watched the defendant from a window, as the defendant had maintained, and waited at the police station door for the defendant to return.

## ANALYSIS

The defendant maintains on appeal that the trial court erred in finding that by returning to the police station after being allowed to leave, the defendant had reinitiated communication with Huber, thereby waiving his previous assertion of the right to counsel under *Miranda*. We hold otherwise and affirm the determination of the trial court.

■ As a preliminary matter, we must first address the appropriate standard of review. Ordinarily, a ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. *People v. Frazier*, 248 Ill. App. 3d 6 (1993). Where, however, the facts and the credibility of the witnesses are not in dispute, the issue is subject to *de novo* review. *Frazier*, 248 Ill. App. 3d 6; *People v. Woods*, 241 Ill. App. 3d 285 (1993). Inasmuch as the facts in this case were in dispute, we will apply the manifestly erroneous standard.

Next, we address the People's contention, raised for the first time on appeal, that the defendant was not in custody or otherwise deprived of his freedom at the time of his exchange with Huber and,

therefore, he was not entitled to *Miranda* protections. The People maintain that the defendant's attempt to invoke his fifth amendment right to counsel as stated in *Miranda*, before he was subject to custodial interrogation, was ineffectual and police need not stop questioning. *People v. Lucas*, 132 Ill. 2d 399 (1989).

■ The general rule that, in support of a judgment, a prevailing party may raise any reason appearing in the record does not apply when the new theory is inconsistent with the position adopted below or the party has acquiesced in contrary findings. *People v. Franklin*, 115 Ill. 2d 328, 336 (1987). We believe that, in this case, the People acquiesced to a finding by the trial court that *Miranda* applied and therefore should not be allowed to maintain a new theory on appeal that is inconsistent with the position taken by the People before the trial court.

Moreover, even though we find that the People are bound by the trial court's determination that the defendant was entitled to *Miranda* protections, we nonetheless affirm the denial of the defendant's motion to suppress, as we find that the trial court's determination that the defendant reinitiated communication with the police is not manifestly erroneous.

■ It is well settled that once an accused invokes his right to counsel, interrogation must cease until an attorney has been made available. *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). If the interrogation continues without the presence of an attorney and a statement is taken, the prosecution bears a heavy burden to prove that the defendant initiated further communication, exchanges or conversations with the police. *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 385-86, 101 S. Ct. at 1884-85.

■ In *People v. Winsett*, 153 Ill. 2d 335, 350 (1992), our supreme court, commenting on *Edwards*, held that, once a defendant invokes his right to counsel, the prosecution is barred from using any statement later made by the defendant in its case in chief "unless the State can establish (1) the *accused* initiated further discussions with the police; *and* (2) that he knowingly and intelligently waived the right he had invoked." (Emphasis in original.) *Winsett*, 153 Ill. 2d at 350.

*Edwards*, therefore, acknowledges that a suspect may waive his fifth amendment right to counsel after it is invoked. In order to establish waiver, a two-prong analysis must be considered: first, the preliminary inquiry is whether the defendant initiated the conversation in a manner evincing a willingness and a desire for a generalized discussion about the investigation; and second, the inquiry is whether by the defendant's initiation of conversation, coupled with

the totality of other circumstances, the defendant knowingly and intelligently waived the right to counsel's presence during questioning. *People v. Hicks*, 132 Ill. 2d 488, 493 (1989), citing *Oregon v. Bradshaw*, 462 U.S. 1039, 77 L. Ed. 2d 405, 105 S. Ct. 1285 (1983).

The burden of proving that a defendant initiated further conversations with the police after previously invoking his right to counsel must be borne by the People. *People v. Trotter*, 254 Ill. App. 3d 514, 523 (1993). Whether a defendant has in fact initiated a conversation with the police is determined by examining the totality of the circumstances, and the circuit court's determination on that issue will not be disturbed unless it is manifestly erroneous. *People v. Allen*, 249 Ill. App. 3d 1001, 1016 (1993); *People v. Gray*, 212 Ill. App. 3d 613, 616 (1991).

■ In the matter *sub judice*, the trial court determined that the defendant knowingly and intelligently waived the right to counsel after previously invoking that right when he *voluntarily* returned to the police station and sought out Huber in order to reinitiate a conversation with him concerning the investigation. We cannot say that the circuit court's determination was manifestly erroneous.

Although the trial court implicitly found that the defendant was subject to a custodial investigation, it made a factual determination that the defendant was released and specifically told by Huber that he was free to leave. The trial court further determined that when the defendant left the police station he was not being watched by the police, nor was his freedom to leave curtailed in any way. The record supports a finding that the defendant was well aware that the investigation would continue and that he would continue to be the subject of the investigation, yet he voluntarily returned to the police station and sought out Huber, in spite of his previous assertion of the right not to speak to Huber without the presence of counsel.

The defendant maintains that the brief period of time during which he was outside the police station was not sufficient to negate the coercive effect of Huber's statements immediately after the defendant asked for an attorney. We disagree. Assuming, *arguendo*, that Huber's statements constituted impermissible interrogation, the defendant's leaving the police station was sufficient to break the chain of events from Huber's statements to the defendant's reinitiation of contact. See, *People v. Ravellete*, 263 Ill. App. 3d 906, 913 (1994) (an unbroken chain of events from the improper admonitions by the police to the defendant's statements negated voluntariness of defendant's waiver of previously asserted *Miranda* rights).

In affirming the trial court, we can think of no clearer example of the defendant reinitiating contact with the police than the situa-

tion here, where the defendant, after asserting his right to presence of counsel at questioning, is released from custody, and leaves the police station only to return and seek out the officer who questioned him, with the intent of answering questions concerning the investigation. Such acts show a desire for a generalized discussion about the case, and the totality of the circumstances indicates that defendant knowingly and intelligently waived his right to counsel. *People v. Hicks*, 132 Ill. 2d at 493.

While the defendant disputes many findings of fact, we hold that the trial court's findings are supported by the record in the form of Huber's testimony, and based upon the evidence of record, we cannot say that the court's determination was erroneous.

For the foregoing reasons, we affirm the judgment of the circuit court of Henry County.

Judgment affirmed.

McCUSKEY and MICHELA, JJ., concur.