THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK OUTLAW, Defendant-Appellant.

Fourth District   No. 4—08—0350

Opinion filed March 25, 2009.

Mark Kevin Wykoff, Sr., of Wykoff Law Office, LLC, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In March 2008, a jury found defendant, Mark Outlaw, guilty of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2006)). In May 2008, the trial court sentenced defendant to 28 years' imprisonment. Defendant appeals, arguing (1) the court erred by denying his motion to suppress where the police officers questioned defendant after he invoked his right to counsel, (2) defendant was denied a fair trial where the State's witnesses repeatedly alluded to other-crimes evidence, (3) the court erred when it allowed a police detective to testify as an expert on whether defendant had formulated the mental state that constituted an element of the offense, and (4) the court erred when it coerced the single " 'holdout' " juror to surrender his or her individual judgment. We note Judge Timothy J. Steadman handled several pretrial matters, including ruling on the motion to suppress, while Judge John K. Greanias conducted the jury trial and sentencing.

Judge Steadman did not err by denying defendant's motion to suppress where defendant initiated further communication with the officers and knowingly and voluntarily waived his right to counsel. Defendant was not denied a fair trial by the State's witnesses' references to purported other-crimes evidence where (1) defendant did not object to some of the testimony at trial and thereby forfeited any objection on appeal; (2) the one time defendant objected, the objection was sustained; and (3) the references were relevant and not unduly prejudicial. Additionally, Judge Greanias did not err by allowing the police detective to testify as an expert on the question of whether defendant possessed the cocaine with the intent to deliver. Finally, Judge Greanias's responses and comments to the jury were not coercive. Therefore, we affirm.

## I. BACKGROUND

In January 2007, the State charged defendant with (1) unlawful possession of a controlled substance (more than 100 grams but less than 400 grams of a substance containing cocaine) with intent to deliver with a prior conviction for unlawful possession of a controlled

substance (720 ILCS 570/401(a)(2)(B) (West 2006)) and (2) unlawful possession of a controlled substance with a prior conviction for unlawful possession of a controlled substance (720 ILCS 570/402(a)(2)(B) (West 2006)).

A more specific recitation of the facts relevant to each of the issues raised is contained in the discussion of that issue. However, a general summary of the facts from the motion-to-suppress hearing and trial follow.

On December 30, 2006, at approximately 11:30 a.m., an officer with the Decatur police department's street-crimes unit observed two Dodge Chargers driving on Interstate 72. The officers knew defendant drove one of the Chargers. The officer believed defendant might be going to either Chicago or Indianapolis, a known "source city" for narcotics. The street-crimes unit established surveillance on Interstate 72 to try to locate defendant when he returned to Decatur.

At approximately 7:30 p.m., officers observed defendant exiting Interstate 72 at Route 48. After one of the officers observed defendant make a lane change without signaling, patrol officers attempted to effectuate a stop. Defendant did not stop, and a high-speed chase ensued. Defendant's vehicle was located shortly thereafter in a driveway on Plover Drive. Defendant was taken into custody for fleeing and eluding. Officers transported defendant to the law-enforcement center and placed him in an interview room. Defendant's vehicle was towed. No contraband was found on defendant or in the vehicle. Defendant did have a total of $1,670 in cash on his person.

The officers suspected that defendant might have disposed of contraband during the high-speed chase, although no one saw defendant do so. Several officers combed the path defendant's vehicle was believed to have followed. The officers located a cloth bag a few blocks away from where they had found defendant. The cloth bag contained a black plastic bag that was wrapped around a Baggie containing a substance that field-tested positive for cocaine. The officers decided to replace the bag with a decoy and establish surveillance in the hope that defendant would return to the bag.

In the meantime, Detective David Dailey entered the interview room and asked defendant if he wanted to make a statement. Defendant said he did not want to make a statement. Detective Dailey collected some clothing from defendant as possible evidence related to the cocaine. Detective Dailey did not read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)). Nor did defendant invoke his right to an attorney at this time.

Defendant was issued two traffic tickets. He posted bond with his driver's license and was released.

At approximately 12:10 a.m. on December 31, 2006, defendant was observed approaching the decoy bag, and officers arrested him. Detective Chad Ramey approached defendant at the scene and asked him if he wanted to cooperate with the street-crimes unit. Defendant responded that he would like to but wanted his lawyer present. Detective Ramey knew he had to cease discussion with defendant. Detective Ramey informed Detective Dailey that defendant had requested counsel.

Sometime after 12:10 a.m., defendant was transported to the law-enforcement center and again placed in an interview room. Detective Dailey entered the room to obtain booking information and defendant's property. Defendant was ultimately interviewed, and the statements made during the interview were the subject of a motion to suppress, discussed in more detail below.

At trial, the State presented evidence (1) of defendant's inculpatory statements by way of the recording of the interview and (2) that defendant's fingerprint was found on the black plastic bag found inside the canvas bag and wrapped around the Baggie containing the 374.7 grams of cocaine.

After several notes from the jury, including two indicating that the jury could not reach a verdict, the jury ultimately found defendant guilty of possession with intent to deliver.

In April 2008, defendant filed a posttrial motion raising, among other things, Judge Steadman's denial of the motion to suppress and the manner in which Judge Greanias handled the jury's notes. In May 2008, Judge Greanias denied defendant's posttrial motion and sentenced defendant to 28 years' imprisonment.

This appeal followed.

## II. ANALYSIS

### A. Trial Court Did Not Err by Denying Defendant's Motion To Suppress

#### 1. *Factual Background for the Motion To Suppress*

In June 2007, defendant filed a motion to suppress statements. In the motion, defendant argued he was interrogated after his second arrest despite his request for counsel. In September 2007, the trial court held a hearing on the motion to suppress.

Detective Dailey testified that, after defendant's second arrest, he learned that defendant had requested counsel at the scene. Detective Dailey entered the interview room to obtain booking information, which Detective Dailey described as name, address, date of birth, driver's license, Social Security, and nicknames. He also intended to obtain defendant's property to put in a bag and then take defendant

to jail. Booking information had not been obtained during defendant's first arrest on the traffic offenses because defendant was not formally booked into the correctional facility. For the traffic offenses, defendant had posted his driver's license.

While obtaining the booking information, defendant asked Detective Dailey, " ['W]hat would cooperating mean, what would that entail[?'] " Detective Dailey testified that he explained to defendant that cooperating meant setting up people and making controlled buys. Defendant then indicated that he wished to speak with Detective Dailey, wanted to cooperate with the investigation, and did not want to talk to his lawyer. When asked who initiated the discussion when he entered the room, Detective Dailey testified, "Well, I began asking him his address."

Detective Dailey's testimony at trial differed from his testimony at the suppression hearing on this point. At trial, Detective Dailey testified that when defendant asked him about cooperating, he told defendant that he had requested a lawyer and that he could not talk to defendant about it. Detective Dailey testified that defendant then indicated he wanted to cooperate.

Once defendant indicated he wished to cooperate and waive his right to a lawyer, Detective Dailey immediately exited the room and turned on the audio-video recorder. Detective Dailey returned to the room and advised defendant of his *Miranda* rights by reading him the custodial-interview-advice form (People's exhibit No. 2), which defendant signed. The interview ensued. Detective Dailey identified People's exhibit No. 1 as a recording of the interview. The first 4 minutes and 44 seconds of the interview were played for the court at the suppression hearing.

Detective Dailey denied that he tried to encourage defendant to waive his right to an attorney and make a statement. Detective Dailey denied making any statements mocking defendant and did not say that defendant's mother would be in trouble. Detective Dailey also testified that he did not tell defendant that if he persisted in his request to have an attorney, there would be no deals.

Detective Dailey also testified that he had approached defendant, prior to December 30, 2006, the date of defendant's initial traffic offense, about cooperating with authorities concerning drug dealing. Defendant did not cooperate.

Detective Ramey testified it was common practice to put people in custody in an interview room to get the paperwork ready. Detective Ramey also testified that standard procedure included obtaining booking information prior to putting someone into the Macon County jail.

Defendant testified on his own behalf at the suppression hearing.

According to defendant, Detective Ramey arrived at the scene of the second arrest and asked defendant if he wanted to cooperate. Defendant told Detective Ramey, "[I]f I cooperate, I want my attorney first." When asked why he said he wanted his attorney first, defendant testified that was what his attorney told him to tell the officers anytime they wanted to talk to him.

Defendant was transported to the law-enforcement center and placed in an interview room similar to the one he was placed in earlier that evening. According to defendant, Detective Dailey entered the room and said, " [']We got you. I got you good this time, huh. Tricked you this time. We was going to be out there all night['], so forth, stuff like that." Detective Dailey continued in a similar manner for a few minutes. Defendant did not say anything. When asked whether Detective Dailey asked defendant if he wanted to cooperate, defendant testified, "I told him I wanted my attorney." Defendant also explained that he and his Springfield attorney had met with Detective Dailey a month or two earlier when Detective Dailey wanted defendant to cooperate.

Defendant testified that in the time between his arrival at the law-enforcement center and the recording of the interview, Detective Dailey told defendant he was going to lock up defendant. Detective Dailey also said he was going to "lock [defendant's] mama up" and that "it was no deal if [defendant] wanted [his] attorney." Defendant testified he would do anything not to have his "mama locked up." After Detective Dailey "said all of that," defendant asked Detective Dailey what cooperating would entail. According to defendant, he told Detective Dailey a couple of times before the recording began that he wanted to talk to his attorney. He agreed he changed his mind after Detective Dailey made those comments to him.

On cross-examination, defendant admitted he had two prior convictions, one for possession of a controlled substance and one for possession with intent to deliver.

After hearing argument by counsel, Judge Steadman took the matter under advisement. Later that same day, Judge Steadman entered a docket entry:

> "The [c]ourt finds: 1) the [d]efendant unequivocally asserted his right to counsel at or around the time of his arrest on 12/31/06 approximately 12:10 a.m., 2) the [d]efendant was transported to the Decatur [p]olice [d]epartment, arriving at least 10 minutes following his arrest, and 3) the [d]efendant waived his *Miranda* rights at 1:01 a.m. as shown on People's [e]xhibit [No.] 2. In order to resolve the issue at hand, the [c]ourt must determine what happened during the 50 minutes or so between the time of arrest and the *Miranda*-rights waiver. Defendant claims Detective Dailey violated

the rule in *Edwards v. Arizona*[,] 451 U.S. 477[,] by making comments to him which amounted to further interrogation or the functional equivalent thereof. Detective Dailey denies the [d]efendant's version of events, and has testified that he was present in the interview room simply to obtain booking information and to collect evidence in the form of clothing from the [d]efendant. The [c]ourt finds Detective Dailey's testimony to be more credible given the circumstances presented. There were legitimate investigative and procedural reasons for Detective Dailey's presence at the operative point in time, especially considering that the [d]efendant's booking information had not been obtained earlier, when the traffic citations were issued. There was a regular practice of taking arrested subjects to the area of the detectives' bureau prior to escorting them to the jail. Because of the [d]efendant's prior experience with the police, and persistence in asserting his right to consult with counsel prior to changing his mind, he does not appear to be the sort of person whose will would be easily overcome. The [d]efendant's two prior convictions cast doubt on his credibility. The interview depicted in People's [e]xhibit [No.] 1, which occurred shortly after the relevant time period, includes no suggestion of events having transpired which comports with the [d]efendant's testimony. The video appears to depict a man who simply resigned to the gravity of the situation. For these reasons, the [c]ourt finds that the [d]efendant, after asserting his right to counsel, initiated further communication with the police, and then waived his *Miranda* rights."

## 2. *The Fifth-Amendment Right to Counsel*

The fifth amendment of the United States Constitution provides, in relevant part, that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. An individual subject to custodial interrogation must be informed of his fifth-amendment rights prior to any questioning, including that he has the right to consult with an attorney and, if he cannot afford one, that one will be appointed to represent him. *Miranda*, 384 U.S. at 471-73, 16 L. Ed. 2d at 722-23, 86 S. Ct. at 1626-27. After being advised of his *Miranda* rights, the individual may waive his rights and respond to the interrogation. *Miranda*, 384 U.S. at 475, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628. However, if the individual asserts his right to counsel, the interrogation must cease "until counsel has been made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (1981). If the police initiate an encounter with a suspect who has requested

counsel and has not had counsel made available to him, any statements made by the suspect are deemed involuntary and inadmissible as substantive evidence at trial. *People v. Winsett*, 153 Ill. 2d 335, 349-50, 606 N.E.2d 1186, 1194-95 (1992) (holding that the *"Edwards* rule is designed to prevent the police from badgering a defendant into waiving his previously asserted *Miranda* rights"). Where the suspect has made statements after invoking his right to counsel, the prosecution may not use those statements unless the "State can establish (1) the *accused* initiated further discussions with the police; *and* (2) that he knowingly and intelligently waived the right he had invoked." (Emphasis in original.) *Winsett*, 153 Ill. 2d at 350, 606 N.E.2d at 1195.

### 3. *Standard of Review Is Mixed*

The review of a trial court's ruling on a motion to suppress involves mixed questions of fact and law. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). This court gives great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *Gherna*, 203 Ill. 2d at 175, 784 N.E.2d at 805. However, this court reviews *de novo* the trial court's legal determination whether suppression is warranted under those facts. *Gherna*, 203 Ill. 2d at 175, 784 N.E.2d at 805.

In this case, Judge Steadman found that defendant unequivocally invoked his right to counsel. The question before the trial court was whether defendant initiated further communication and thereafter voluntarily waived his *Miranda* rights.

### 4. *Routine Booking Questions Did Not Constitute Interrogation*

Defendant first argues that his query about cooperation was "provoked by words and actions attendant to booking." We disagree.

■ Judge Steadman found the officers' version of events more credible than defendant's version. Therefore, this court will accept the officers' testimony as true. See *People v. Johnson*, 385 Ill. App. 3d 585, 593, 898 N.E.2d 658, 667 (2008) (noting that the reviewing court gives great deference to the trial court's credibility determinations).

Detective Dailey testified he entered the interview room solely to obtain booking information from defendant. According to Detective Dailey's testimony at the suppression hearing, while asking defendant for booking information—specifically, his address—defendant asked him what cooperating would entail.

If Detective Dailey's questions to defendant constituted interrogation, any subsequent statements by defendant must be suppressed because he had invoked his right to counsel. Interrogation includes express questioning or other words or actions that police know "are reasonably likely to elicit an incriminating response from the suspect."

*Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1689-90 (1980). Routine booking questions, such as name, address, height, weight, date of birth, and age generally do not constitute interrogation. See *Pennsylvania v. Muniz*, 496 U.S. 582, 601, 110 L. Ed. 2d 528, 552, 110 S. Ct. 2638, 2650 (1990) (plurality op.); *United States v. Virgen-Moreno*, 265 F.3d 276, 293-94 (5th Cir. 2001) ("questions designed to elicit incriminatory admissions are not covered under the routine booking question exception"); *United States v. Parra*, 2 F.3d 1058, 1068 (10th Cir. 1993) ("routine booking questions do not constitute interrogation because they do not normally elicit incriminating responses"). Therefore, Detective Dailey did not interrogate defendant when he began asking defendant routine booking questions, such as asking for defendant's address.

### 5. *Fact That the Officers Knew Defendant Had Retained Counsel Was Immaterial*

Defendant also argues the waiver was improperly elicited, particularly where the officers knew defendant was represented by counsel on the specific issue of cooperation.

The record indicates that at some point a month or two prior to December 30, 2006, Detective Dailey met with defendant and defendant's Springfield attorney at defendant's attorney's office to discuss possible cooperation by defendant. No other information about this meeting is contained in the record on appeal. The record does not indicate whether the conversation related to another charge for which criminal proceedings had been commenced.

The sixth-amendment right to counsel, which attaches when adversarial criminal proceedings have been commenced, is offense specific. *People v. Graham*, 339 Ill. App. 3d 1049, 1056, 791 N.E.2d 724, 730 (2003). Therefore, being represented by counsel on a charged offense does not prevent police from questioning defendant about another unrelated offense. *Graham*, 339 Ill. App. 3d at 1056, 791 N.E.2d at 730.

■ Unlike the sixth-amendment right to counsel, the fifth-amendment right to counsel is not offense specific. "Once a defendant invokes this right to counsel for one offense, the defendant may not be approached regarding any offense unless counsel is present." *People v. Lira*, 318 Ill. App. 3d 118, 123, 742 N.E.2d 885, 890 (2001). However, "a suspect's right to be free from further interrogation under *Edwards* exists only if there has been no break in custody." *United States v. Drake*, 934 F. Supp. 953, 962 (N.D. Ill. 1996). It appears, from what little information is contained in the record, that the meeting a few months earlier was not a custodial interrogation. Moreover, a break

clearly occurred between that earlier meeting and the custodial interrogation on December 31, 2006.

Defendant's argument is, essentially, that because the officers knew defendant had (1) retained counsel, (2) been approached a month or two earlier about cooperation, and (3) declined to cooperate while in the presence of counsel, the officers should not have accepted defendant's alleged waiver of counsel.

Under the Illinois Constitution, police officers may not deny an attorney access to his client and may not refuse to inform a suspect in custody that his attorney is seeking immediate access to him. *People v. McCauley*, 163 Ill. 2d 414, 444-45, 645 N.E.2d 923, 938-39 (1994) (finding the defendant's waiver of counsel invalid under the state constitution where counsel retained for the defendant went to the police station and the officers denied counsel access to the defendant and refused to tell the defendant that counsel was available at the police station). Defendant does not cite, nor does this court find, any case holding that police officers must contact a suspect's attorney before custodial interrogation if they are aware the suspect has had an attorney. In fact, the appellate court in *People v. Pitchford*, 314 Ill. App. 3d 72, 79, 731 N.E.2d 323, 328-29 (2000), explicitly rejected such an extension of *McCauley*. In *Pitchford*, 314 Ill. App. 3d at 73-74, 731 N.E.2d at 325, the defendant's retained counsel informed the police officers, prior to the defendant's arrest, that she was the defendant's attorney. She did not, however, appear at the police station during the police officers' questioning of the defendant. *Pitchford*, 314 Ill. App. 3d at 74, 731 N.E.2d at 325. On appeal, the defendant, relying on *McCauley*, argued that because the police officers knew the defendant had retained counsel, they violated the Illinois Constitution by interrogating him without his attorney present. *Pitchford*, 314 Ill. App. 3d at 78, 731 N.E.2d at 328. The appellate court rejected that argument:

> "Extending the *McCauley* rule to situations such as the instant case would place an undue burden on the police. Such a holding would impose a duty upon the police before undertaking any interrogation of a prisoner in their custody to contact the defendant's attorney if they were aware that he had an attorney. While that duty may not seem overly burdensome under the facts of the case at bar, it would set a troubling and problematic precedent. In order to avoid violating the defendant's rights under such a regime, the police would have to keep track of which suspects had retained counsel. Such a requirement would be especially burdensome if the knowledge of one police officer that a defendant was represented by counsel was imputed to the other officers in the department."
> *Pitchford*, 314 Ill. App. 3d at 79-80, 731 N.E.2d at 329.

■ In this case, the record contains no indication that defendant's attorney was attempting to access defendant or was immediately available. The mere fact that the officers knew defendant had retained counsel does not prevent them from interrogating defendant, so long as they otherwise complied with the United States and Illinois Constitutions.

### 6. *Trial Court Did Not Err by Concluding That Defendant Initiated Further Communication*

■ Having disposed of defendant's initial arguments, this court now turns to whether defendant initiated further communications, exchanges, or conversations with the police such that he "evinced a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46, 77 L. Ed. 2d 405, 412, 103 S. Ct. 2830, 2835 (1983). If so, this court must determine whether defendant's purported waiver of his right to counsel was knowing and intelligent. *Bradshaw*, 462 U.S. at 1044-45, 77 L. Ed. 2d at 412, 103 S. Ct. at 2834.

#### a. Defendant Initiated Further Communications

Defendant first argues that his question about cooperation did not evince a willingness and desire for a generalized discussion about the investigation. Defendant asserts that the "query was one regarding cooperation only, not one directed toward the facts and circumstances of arrest."

Whether a defendant initiated further communication depends on whether the defendant "evinced a willingness and a desire for a generalized discussion about the investigation" or was "merely a necessary inquiry arising out of the incidents of the custodial relationship." *Bradshaw*, 462 U.S. at 1045-46, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835. Specifically, requests to use the bathroom or for a drink of water do not evince a willingness and a desire for a generalized discussion about the investigation. See *People v. Bell*, 217 Ill. App. 3d 985, 996, 577 N.E.2d 1228, 1238 (1991) (distinguishing "inquiries into the routine aspects of custody" from questions indicating a desire for a generalized discussion about the investigation).

The State bears the burden of proving that a defendant initiated further conversations with the police after previously invoking his right to counsel. *People v. Jones*, 285 Ill. App. 3d 341, 346, 674 N.E.2d 814, 818 (1996). As stated in *People v. Flores*, 315 Ill. App. 3d 387, 392, 734 N.E.2d 63, 67 (2000):

> "Where, as here, the issue is whether the 'accused himself initiated further communication' [citation], the preliminary inquiry is whether, under the totality of circumstances, the defendant initiated the conversation in a manner evincing a 'willingness and

desire for a generalized discussion about the investigation' [citation]. If the defendant's comment or question does not express a desire for a generalized discussion about the investigation, the officer must not respond in a manner which police should know is reasonably likely to elicit an incriminating response. [Citations.] In determining whether a statement by police is reasonably likely to elicit such a response, the focus is primarily upon the perceptions of the suspect rather than upon the intent of the police. [Citation.]"

Here, Detective Dailey testified at the suppression hearing that while he was obtaining booking information, defendant asked, " ['W]hat would cooperating mean, what would that entail[?'] " Detective Dailey answered defendant's question by explaining that cooperating meant setting up people and making controlled buys. According to Detective Dailey, defendant then indicated that he wished to speak with Detective Dailey, wanted to cooperate with the investigation, and did not want to talk to his lawyer.

While Detective Dailey's testimony at trial differed somewhat from his testimony at the suppression hearing, defendant does not argue that distinction on appeal, nor did he raise that distinction at trial as a basis for the trial court to reconsider the denial of the motion to suppress. See, e.g., *People v. Brooks*, 187 Ill. 2d 91, 127-28, 718 N.E.2d 88, 109 (1999) (generally, evidence introduced at trial should not be considered by the appellate court to reverse a trial court's denial of a motion to suppress—as opposed to affirm the denial—especially where the defendant does not object to the testimony at trial or ask the court to reconsider its ruling when the evidence was introduced at trial).

Instead, defendant argues that once defendant arguably posed that question, Detective Dailey should have immediately afforded defendant his counsel rather than using that question as a means to "circumvent" defendant's asserted right.

We conclude, looking at the totality of the circumstances, defendant's question regarding cooperation evinced a desire for a generalized discussion about the investigation. After defendant's second arrest, Detective Ramey asked defendant if he wanted to cooperate. Defendant stated he did, but that he wanted his attorney first. Detective Dailey responded by telling defendant what cooperating would entail—setting people up and making controlled buys.

When defendant asked about cooperation during his booking, he evinced a willingness and desire to discuss the investigation. His question—"What would cooperating mean, what would that entail[?]"—particularly in light of Detective Ramey's earlier question about

cooperation, was not a question pertaining to a routine aspect of custody.

Even if defendant's question did not constitute reinitiation, defendant did reinitiate after Detective Dailey answered defendant's question. Defendant does not argue here that Detective Dailey's answer to defendant's question was reasonably likely to elicit an incriminating response. See, *e.g., Innis*, 446 U.S. at 302, 64 L. Ed. 2d at 308, 100 S. Ct. at 1690 (holding that the "definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response" (emphasis in original)). Therefore, defendant has forfeited the argument. See 210 Ill. 2d R. 341(h)(7) (points not argued are forfeited).

Nonetheless, defendant's response to Detective Dailey's statement was, according to Detective Dailey's testimony, that he wished to speak to Detective Dailey, wanted to cooperate, and did not want his attorney. That statement also reinitiated the conversation in a manner evincing a willingness and desire for a generalized discussion about the investigation. See, *e.g., People v. Starnes*, 273 Ill. App. 3d 476, 483, 652 N.E.2d 1177, 1183 (1995) (finding that while the defendant's question about how long it would be until an attorney could be appointed and the officer's answer that an attorney would be appointed in court did not constitute reinitiation, the defendant's statement thereafter that he wanted to tell the truth and his side of the story did constitute reinitiation).

Detective Dailey properly responded to that statement by again advising defendant of his *Miranda* rights. See, *e.g., People v. Olivera*, 164 Ill. 2d 382, 392, 647 N.E.2d 926, 931 (1995) (holding that the officer should advise the accused of his rights instead of providing an answer the officer reasonably knows is likely to elicit an incriminating response).

### b. Defendant Voluntarily Waived His Right to Counsel

The conclusion that defendant initiated further communication only permits the introduction of defendant's initiating statement. See *Edwards*, 451 U.S. at 485-86, 68 L. Ed. 2d at 387, 101 S. Ct. at 1885. The statements a defendant made thereafter in response to police questioning are admissible only if the defendant made an intelligent waiver of his previously invoked right to counsel. See *Bradshaw*, 462 U.S. at 1044-45, 77 L. Ed. 2d at 412, 103 S. Ct. at 2834. That determination is made by examining the totality of the circumstances, " 'including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.' " *Bradshaw*, 462 U.S. at

1046, 77 L. Ed. 2d at 413, 103 S. Ct. at 2835, quoting *Edwards*, 451 U.S. at 486 n.9, 68 L. Ed. 2d at 387 n.9, 101 S. Ct. at 1885 n.9.

Here, Detective Dailey testified he read the custodial-interview-advice form to defendant (People's exhibit No. 2). That form is initialed and signed by defendant. The recording of the interview also shows Detective Dailey reading defendant that form and defendant signing it. Detective Dailey also testified that he did not make any promises or threats, and denied he tried to encourage defendant to waive his right to counsel. Under the totality of circumstances, Judge Steadman did not err by concluding that defendant voluntarily waived his right to counsel. See *Bradshaw*, 462 U.S. at 1046-47, 77 L. Ed. 2d at 413, 103 S. Ct. at 2835 (finding no reason to dispute the trial court's conclusions that the police officers made no threats or promises, the defendant was properly advised of, understood, and waived his rights, the defendant changed his mind absent any impropriety by the police officers, and the defendant's statements were voluntary).

### B. Defendant Forfeited Objections to Alleged Other-Crimes Evidence, the One Objection Made Was Sustained, and the Evidence Was Relevant and Not Unduly Prejudicial

■ Defendant next argues that Judge Greanias erred by admitting at trial the following other-crimes evidence: (1) Sergeant Rick McElroy's testimony that the decision to seize defendant's car was not based only upon "this particular incident," (2) Detective Ramey's testimony that the investigation of defendant was not focused only upon the case for which defendant was being tried but also for "[h]is activity and others that he's involved with," and (3) Detective Dailey's testimony that he was familiar with defendant and that defendant's car was related to another investigation.

Defendant has forfeited several of his claims by failing to object at trial. Moreover, the identification and the other-crimes evidence was relevant and not unduly prejudicial.

#### 1. *Standard of Review Is Abuse of Discretion*

Other-crimes evidence is not admissible to prove a defendant's propensity to commit a crime but may be admissible to prove *modus operandi*, intent, identity, motive, or absence of mistake. *People v. Spyres*, 359 Ill. App. 3d 1108, 1112, 835 N.E.2d 974, 977 (2005). Other-crimes evidence is also admissible if it is part of a continuing narrative of the event giving rise to the offense (*People v. Thompson*, 359 Ill. App. 3d 947, 951, 835 N.E.2d 933, 936 (2005)), is intertwined with the event charged (*Thompson*, 359 Ill. App. 3d at 951, 835 N.E.2d at 936), or explains an aspect of the crime charged that would otherwise be implausible (*People v. LeCour*, 273 Ill. App. 3d 1003, 1008, 652 N.E.2d

1221, 1226 (1995)). A trial court's ruling on the admissibility of other-crimes evidence will not be reversed absent a clear abuse of discretion. *Spyres*, 359 Ill. App. 3d at 1113, 835 N.E.2d at 978.

## 2. *Defendant Forfeited His Objection to Part of Sergeant McElroy's Testimony and the Trial Court Sustained Defendant's Objection to the Other Part of Sergeant McElroy's Testimony*

Defendant first argues he suffered prejudice from Sergeant McElroy's testimony that the decision to seize defendant's car was not based only on "this particular incident." The specific testimony follows.

On cross-examination, defense counsel asked Sergeant McElroy why defendant's car was towed. After defense counsel confirmed the car was towed because it had value, the following exchange occurred:

"Q. And you thought at that point the defendant was involved in some sort of illegal narcotics situation?

A. I knew he was, yes, sir.

Q. You knew he was. You knew he was. Is that your testimony, sir? At that point when you ordered that vehicle to be seized, you knew he was involved?

A. In narcotics, yes.

Q. Because you'd fingerprinted the bag already? Done the fiber samples? How did you know, sir?

MS. WAGONER [(assistant State's Attorney)]: Let him answer the questions.

THE COURT: Sustained.

THE WITNESS: It has nothing to do with that investigation *per se*."

On redirect, the following exchange occurred:

"Q. And with regards to the decision to seize the defendant's car in this situation, that wasn't based only upon this particular incident; correct?

A. Correct.

Q. There was an investigation?

MR. FULTZ [(defense counsel)]: Objection, Judge. This is getting into areas that are not in evidence, and we would strongly object to him testifying in this matter.

THE COURT: Sustained.

MS. WAGONER: Your Honor, well, if I could just make a record. The record is that he opened the door into this situation. The officer should be able to explain it.

THE COURT: I understand that he opened the door. I am sustaining the objection."

Defendant did not object when the State asked whether the deci-

sion to seize the defendant's car was based only upon "this particular incident." Therefore, defendant has forfeited this objection on appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988) (to preserve an error for review, a defendant must object at trial and raise the error in a written posttrial motion).

Moreover, when the State asked if "[t]here was an investigation," defense counsel did object, and the trial court sustained the objection. "A prompt sustaining of an objection will cure any prejudice resulting from an improper remark." *People v. Benson*, 266 Ill. App. 3d 994, 1004, 641 N.E.2d 617, 625 (1994). The court also instructed the jury, after closing arguments, to "disregard questions and exhibits which were withdrawn or to which objections were sustained." A court must presume the jurors followed the court's instructions. *People v. Bratton*, 178 Ill. App. 3d 718, 726, 533 N.E.2d 572, 578 (1989). No error occurred here.

### 3. *Defendant Forfeited His Objection to Detective Ramey's Testimony*

Defendant also challenges the admission of Detective Ramey's testimony that the investigation of defendant was not focused only on the case for which defendant was being tried but also for other matters in which defendant was involved. On cross-examination by defense counsel, the following exchange occurred:

"Q. The fact of the matter is, you want him to assist the Decatur [p]olice [d]epartment in their investigation of his narcotic activity based on that bag that was found at that location; correct?

A. His activity and others that he's involved with."

The State argues defendant elicited the information and cannot now complain of the alleged error. See *People v. Johnson*, 368 Ill. App. 3d 1146, 1155, 859 N.E.2d 290, 299 (2006) ("A party cannot complain of error that he himself injected into the trial"). However, Detective Ramey's answer was volunteered. The question asked related only to defendant's activity based on the bag found and did not relate to "others he's involved with." Moreover, the answer defense counsel sought was a "yes" or "no" answer. Nonetheless, defense counsel did not move to strike Detective Ramey's response and has therefore forfeited any objection to the alleged error. See *People v. Ishmael*, 126 Ill. App. 3d 320, 329, 466 N.E.2d 1334, 1340 (1984) (failure to move to strike improper evidence constitutes forfeiture of the error).

Moreover, the testimony may actually not be a reference to other criminal activity but simply a reference to the activity of other individuals with whom defendant was involved in the particular case. Specifically, because defendant traveled out of town and returned, that

suggested he was involved with others in his narcotics activity (*i.e.*, the person from whom he purchased the drugs). Regardless, no error occurred here.

### 4. *Defendant Forfeited His Objections to Detective Dailey's Testimony and, in Any Event, Such Testimony Was Relevant and Not Unduly Prejudicial*

Defendant also challenges Detective Dailey's testimony that (1) he was familiar with defendant and (2) defendant's car was related to another investigation.

On direct examination, the State asked Detective Dailey if he was familiar with defendant, to which Detective Dailey responded, "Yes, I am." Detective Dailey then identified defendant in court. Defendant did not object. Therefore, he forfeited this argument. See *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.

Even if this court were to address the issue on the merits, we would find no error. "[E]vidence that the arresting officer was previously acquainted with [the] defendant does not necessarily imply a criminal record." *People v. Stover*, 89 Ill. 2d 189, 196, 432 N.E.2d 262, 266 (1982). However, where the only reason to inquire into the previous acquaintance is the intent to imply a prior criminal history, such evidence should be avoided unless otherwise relevant. *Stover*, 89 Ill. 2d at 196, 432 N.E.2d at 266; see also *People v. Bryant*, 113 Ill. 2d 497, 514, 499 N.E.2d 413, 421 (1986) (where evidence of prior acquaintance is not relevant, such testimony should be avoided).

Here, the inquiry whether Detective Dailey was familiar with defendant related to Detective Dailey's ability to identify defendant in court. Detective Dailey's response did not raise an inference that Detective Dailey knew defendant from prior criminal activity.

The case cited by defendant, *People v. Carter*, 297 Ill. App. 3d 1028, 697 N.E.2d 895 (1998), is distinguishable. In *Carter*, the officers made repeated references to knowing defendant by name when they observed him conducting what appeared to be a drug deal. *Carter*, 297 Ill. App. 3d at 1035-36, 697 N.E.2d at 900-01. The appellate court concluded that the familiarity evidence should not have been admitted and found no "relevant purpose for repeated references to a narcotics and gang surveillance officer" knowing the defendant by name. *Carter*, 297 Ill. App. 3d at 1036, 697 N.E.2d at 901.

In contrast here, Detective Dailey's testimony that he was familiar with defendant was relevant to his identification of defendant in court. Detective Dailey's familiarity can be attributed to his involvement in the case being tried and does not imply that Detective Dailey knew defendant from prior criminal activity.

Detective Dailey also testified on direct examination as follows: "Detective Ramey indicated to me that these two cars were related to another investigation, which, when he described the vehicles, I was able to agree with him on that aspect."

Defendant did not object to the testimony and therefore forfeited this issue. See *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130. Even if this court were to address the issue on the merits, the testimony was relevant to explain the circumstances of the investigation. See, *e.g.*, *People v. Batinich*, 196 Ill. App. 3d 1078, 1084, 554 N.E.2d 613, 618 (1990) (the officer's testimony that he had conversations with the informant and then "engaged in a course of action culminating in an undercover drug transaction" was not unfairly prejudicial and "was relevant to explain the investigatory procedures leading to the defendant's arrest"). Notably, "evidence of other crimes is not admissible merely to show how the investigation unfolded unless such evidence is also relevant to specifically connect the defendant with the crimes for which he is being tried." (Emphasis omitted.) *People v. Lewis*, 165 Ill. 2d 305, 346, 651 N.E.2d 72, 91 (1995). Here, however, the evidence not only showed how the investigation unfolded but also connected defendant with the crime for which he was being tried. Detective Dailey's testimony explained why the police officers focused on the defendant's vehicle and initiated the surveillance that ultimately led to defendant's arrest.

## C. Trial Court Did Not Abuse Its Discretion by Allowing Detective Dailey To Give His Expert Opinion That Defendant Possessed the Cocaine With Intent To Deliver

■ At trial, the State sought to have Detective Dailey testify as an expert in the distribution of drugs. Over defense counsel's objection, Judge Greanias found Detective Dailey qualified. Judge Greanias admonished the jury, however, that "it is for you to decide what weight, if any, you will give to this witness's testimony."

After Detective Dailey testified about his training and experience, the prosecutor asked him if he had an opinion, within a reasonable degree of certainty, whether the possession of the cocaine was consistent with personal use or intent to deliver. Detective Dailey testified he did have an opinion—"That it was possessed with the intent to deliver." Detective Dailey subsequently testified as to the basis for his opinion.

On appeal, defendant argues that Judge Greanias "usurped the province of the jury" by allowing Detective Dailey to testify about defendant's mental state, which was a necessary element of the crime charged. We disagree.

A person may testify as an expert where (1) his testimony will aid the trier of fact and (2) he is qualified to testify based on knowledge, skill, experience, training, or education. See *In re Keith C.*, 378 Ill. App. 3d 252, 261-62, 880 N.E.2d 1157, 1167 (2007); *People v. Swart*, 369 Ill. App. 3d 614, 631, 860 N.E.2d 1142, 1157 (2006). "[A] witness, whether expert or lay, may provide an opinion on the ultimate issue in a case." *People v. Terrell*, 185 Ill. 2d 467, 496, 708 N.E.2d 309, 324 (1998). Such testimony does not usurp the province of the jury "because the trier of fact is not required to accept the witness' conclusion." *Terrell*, 185 Ill. 2d at 497, 708 N.E.2d at 324. The admission of expert testimony is within the discretion of the trial court, and this court will not reverse that decision absent an abuse of discretion. *People v. Milka*, 336 Ill. App. 3d 206, 233, 783 N.E.2d 51, 73 (2003).

Here, Judge Greanias found Officer Dailey qualified to testify, a finding defendant does not challenge on appeal. Judge Greanias also determined that Detective Dailey's testimony could assist the jury in determining whether defendant possessed the cocaine for personal use or with the intent to deliver. Judge Greanias admonished the jurors that they were to decide what weight, if any, to give the testimony. Judge Greanias did not abuse his discretion by allowing Detective Dailey to testify as to his opinion that the cocaine was possessed with the intent to deliver. See, *e.g.*, *People v. Reatherford*, 345 Ill. App. 3d 327, 343, 802 N.E.2d 340, 354 (2003) (finding the officer offered "relevant testimony that the jury could find helpful in determining whether [the] defendant had the intent to manufacture methamphetamine" and because the jury was not required to accept the officer's testimony, the "defendant's right to a fair trial was not violated"); *People v. King*, 218 Ill. App. 3d 248, 253, 578 N.E.2d 217, 220 (1991) (declining to adopt the position that the average juror is capable of distinguishing between a user and a seller without assistance of the expert).

### D. Trial Court's Response to the Jury's Note Was Not Coercive

■ Defendant last argues Judge Greanias erred when he coerced the single holdout juror to surrender his or her individual judgment.

#### 1. *Factual Background*

On March 19, 2008, at 4:06 p.m., the jury withdrew to deliberate. Sometime thereafter, the jury sent the trial court a note asking to see the digital video recording. Over defendant's objection, Judge Greanias informed the jurors that they would adjourn and return at 9 the following morning to watch the recording.

On March 20, 2008, Judge Greanias played the recording for the jury. The jury then returned to deliberations.

Sometime thereafter, the jury sent another note, this time asking

for the identification of certain photographs entered into evidence. Judge Greanias responded in writing, without objection, that the jurors must rely on their memory of the evidence for identification of the photographs.

At approximately 11 a.m., the jury sent a note stating the jurors were unable to reach a unanimous decision. The State asked Judge Greanias to give a *Prim* instruction. See *People v. Prim*, 53 Ill. 2d 62, 289 N.E.2d 601 (1972) (instructions given to a deadlocked jury). Defense counsel requested a mistrial.

Judge Greanias noted the jury had only deliberated 1½ hours that day and a little less than 2 hours the night before. The court found it was too early to declare the jury deadlocked. The jury returned to the courtroom, and Judge Greanias admonished it as follows:

> "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.
>
> The [c]ourt asks you to continue with your deliberations in this case, and I will send this additional instruction with you into the jury room."

Sometime later—the record is unclear—the jury sent another note. This note stated that "11 jurors vote guilty on both counts" and "1 juror votes not guilty." Judge Greanias told counsel the following, outside the presence of the jury:

> "What the [c]ourt will do now is I will call the jurors in, find out who the foreperson is. I will ask the foreperson whether or not he or she believes that if given more time that they could arrive at a unanimous verdict. If the jury foreperson says yes, I'll send them out for further deliberations. If the jury foreperson says no, I will then ask each individual juror if he or she agrees with what the foreperson says. Of course, I will tell them that I don't want any juror to reveal his or her vote."

Neither the State nor the defense objected to the court proceeding in such manner. Defense counsel did not ask Judge Greanias to declare a mistrial at this point.

When the jury returned to the courtroom, Judge Greanias asked the foreman whether he believed the jury would be able to arrive at a unanimous verdict if the judge asked the jury to return to the deliberation room and continue further. The foreman stated, "No, Your Honor." Judge Greanias then asked each juror if he or she agreed with the foreman. When asked if he or she agreed with the foreman, the second and eleventh jurors answered, "I don't know." The remaining jurors answered, "Yes" or "I do."

The trial judge stated:

> "Well, I am going to ask you to return for a little while longer. If you can communicate with another note, if after discussing it further, you believe you can't arrive at a verdict, but I will ask you one more time. Remember to review the instruction I gave you reminding you that you're not partisans in the case, and we'll ask you to go back in for further deliberations."

After the jury left the courtroom, Judge Greanias stated that, given the responses by two of the jurors that they were not sure, it was in the best interest of justice to give the jurors another opportunity to "discuss this." Defense counsel asked to make a record. Defense counsel argued that the jurors had twice indicated their belief that they could not reach a verdict. By sending them back in, defense counsel believed the court had put one juror in the "uncomfortable position of beginning to realize that unless he or she changes their [sic] position, they're not going home." Judge Greanias responded that the jurors had only deliberated for eight hours, and the court had made the decision that they should continue to deliberate.

That same day, but the record does not disclose the time, the jury returned a verdict finding defendant guilty of unlawful possession of a controlled substance with intent to deliver. (The other jury verdict forms—one finding him not guilty and one finding him guilty of possession of a controlled substance—are blank.) At defense counsel's request, Judge Greanias polled the jury. Each juror confirmed that it was and remained his or her verdict.

In the posttrial motion, defense counsel argued Judge Greanias committed clear error by sending the jury back to deliberate after the second time the jury indicated it was deadlocked. In his motion, defense counsel asserted an hour passed between the second admonition and the verdict.

At the posttrial hearing, defense counsel asserted that because Judge Greanias knew the jurors were split 11 to 1, he should not have sent the jury back for further deliberations. Defense counsel argued the court sent the message that unless that juror changed his or her position, the jurors were not going home. Defense counsel identified

the time between the second admonition and the verdict as "45 minutes later" or "however much time elapsed." Judge Greanias denied the posttrial motion.

## 2. *Standard of Review Requires Examination of the Totality of the Circumstances*

When reviewing instructions given to a deadlocked jury, this court examines whether, under the totality of the circumstances, "the language used by the court actually coerced or interfered with the jury's deliberations to the prejudice of the defendant." *People v. Foreman,* 361 Ill. App. 3d 136, 151, 836 N.E.2d 750, 763 (2005). "[T]he reviewing court's decision often turns on the difficult task of ascertaining whether the challenged comments imposed such pressure on the minority jurors that it caused them to defer to the conclusions of the majority for the purpose of expediting a verdict." *People v. Fields,* 285 Ill. App. 3d 1020, 1029, 675 N.E.2d 180, 186 (1996).

## 3. *Trial Court's Response Was Not Coercive*

On appeal, defendant argues that once the jury sent the note indicating the 11-to-1 split, Judge Greanias should have declared a mistrial. However, defendant did not move for a mistrial at that point. Instead, defense counsel agreed with the court's suggestion that the court (1) ask the foreperson whether, if given more time, they could arrive at an unanimous verdict and, (2) if the foreperson said no, then ask each individual juror if he or she agreed. Therefore, defendant has forfeited the argument that the court should have immediately declared a mistrial. See, *e.g., People v. Flores,* 381 Ill. App. 3d 782, 784-85, 886 N.E.2d 1143, 1145 (2008) (finding the defendant forfeited review of the issue where he agreed with the suggested response to the jury question and failed to raise the issue in his posttrial motion).

The State argues that defendant, having agreed to the trial court's procedure, forfeited all objections to that procedure on appeal. However, while defendant agreed with the court asking the foreperson and jurors whether the jurors could arrive at a unanimous verdict if given more time, defense counsel did not agree with the procedure to return the jury for further deliberation if any jurors answered, "I don't know." After the jury returned to deliberate, defense counsel did object, arguing that by sending the jury back to deliberate, Judge Greanias put one juror in the uncomfortable position of realizing that if he or she did not change his or her mind, the jurors were not going home. Therefore, this court will address defendant's contention that Judge Greanias's response, after learning that two jurors did not know whether the jury could reach a unanimous verdict if given more time, was coercive.

As evidence of coercion, defendant asserts that the jury returned a verdict "shortly" after Judge Greanias's admonition. The length of deliberations following the instruction is not alone conclusive in determining whether a verdict was coerced, although the passage of a long period of time suggests that the jurors were not coerced. See *Foreman*, 361 Ill. App. 3d at 151, 836 N.E.2d at 763.

Here, the record does not reflect the amount of time that passed between Judge Greanias's comments and the jury's verdict. Defense counsel asserts on appeal that the verdict was returned "shortly." However, unsupported statements by defense counsel are not properly before this court. See, *e.g.*, *People v. Morales*, 281 Ill. App. 3d 695, 704-05, 666 N.E.2d 839, 845-46 (1996) (wherein defense counsel asserted on appeal that the verdict was coerced because one juror was running low on medication and others were experiencing anxiety but the record did not so indicate). At trial, defense counsel alleged in his posttrial motion that more than one hour had passed and argued at the posttrial hearing that 45 minutes or "however much time elapsed." Neither 45 minutes nor 1 hour appears "short." See, *e.g.*, *People v. Friedman*, 144 Ill. App. 3d 895, 903-04, 494 N.E.2d 760, 765 (1986) (finding that where the jury returned a verdict five minutes after the trial court's comment, the court impermissibly hastened the verdict). In any event, the appellant bears the burden of providing an adequate record. *People v. House*, 202 Ill. App. 3d 893, 908, 560 N.E.2d 1224, 1234 (1990). Defendant did not provide an adequate record on that issue here.

Based on evidence in the record, the totality of the circumstances indicates that Judge Greanias's response to the jury was proper and not coercive. Based on comments by the trial judge, the jurors had only been deliberating a total of eight hours when they sent the second note indicating the 11-to-1 split. The approach used by the court—inquiring of the jurors whether, if given more time, they could arrive at a unanimous verdict—was not in and of itself coercive. See, *e.g.*, *People v. Anthony*, 30 Ill. App. 3d 464, 468, 334 N.E.2d 208, 211 (1975) (judge's inquiry of each juror about whether a verdict was possible and its grant of a request for further time was not coercive).

Notably here, when Judge Greanias sent the jury back for further deliberations, the judge asked the jurors to deliberate for a "little while longer" and communicate with another note if, after discussing it further, they believed they could not arrive at a verdict. Such language did not send the message that the jurors would not be going home unless they returned a unanimous verdict. Nothing in the court's comments told the holdout juror that he or she had to change his or her mind. In fact, the court's admonishment reminded the jurors of

the instruction previously given and that they were not partisans in the case.

Defendant also argues that Judge Greanias should not have ordered further deliberation once the judge learned that only one juror voted not guilty. Even assuming defendant has not forfeited this argument by agreeing to the court's inquiry of the jurors, we find no error. In *People v. Watkins*, 293 Ill. App. 3d 496, 507, 688 N.E.2d 798, 805-06 (1997), the court held that "it may be improper for a court to issue supplemental instructions urging deadlocked jurors to reach a unanimous verdict after the court becomes aware that a majority of jurors favor conviction." The reason is that a supplemental jury instruction may have a coercive effect upon the minority juror and might lead the minority juror to believe the judge agrees with the majority. *Watkins*, 293 Ill. App. 3d at 507, 688 N.E.2d at 806. However, *Watkins* also holds that "where the trial court receives an *unsolicited* statement regarding the numerical division of the jurors, an order instructing the jury to continue its deliberations does not constitute error." (Emphasis in original.) *Watkins*, 293 Ill. App. 3d at 507, 688 N.E.2d at 806. Here, the numerical division was unsolicited. Judge Greanias did not err by sending the jury back for further deliberation.

Of note, Judge Greanias did, on one occasion, indicate the time the jury sent a note and the amount of time the jurors had spent deliberating. However, the judge, court reporter, or clerk should note the time when the jury leaves and returns to the courtroom as well as the time a note from the jury is received. That would have made a better record on appeal and eliminated some of the confusion in this case regarding the amount of time the jury deliberated following instructions by the court.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed.

McCULLOUGH, P.J., and APPLETON, J., concur.